## Golden v. Cornett, et al.

(Decided June 17, 1913.)

### Appeal from Perry Circuit Court

1. Vendor and Purchaser—Contract—Construction—Sale—Option.— An agreement providing for the transfer of title to certain lands, at a stipulated price, upon the ascertainment of the title and acreage, and payment of the purchase money, held to be a sale and not an option.

2. Vendor and Purchaser—Contract—Rescission—Abandonment.— Acts of parties to a contract of sale of real estate, to constitute its abandonment, must be positive, unequivocal, and inconsistent with the continuance of the contract.

3. Vendor and Purchaser—Contracts—Condition Precedent—Rescission—Rights of Vendor.—A provision in a contract of sale that vendor shall furnish to the purchaser his title papers and assist in tracing title to the lands thereby sold, is a condition precedent which must be performed, or offered to be performed, before vendor is entitled to rescind for failure of purchaser to ascertain acreage and pay balance of purchase price.

4. Specific Performance—Contracts.—A purchaser having paid to the vendor a part of the purchase money, under a contract of sale of lands, and the vendor being in default as to conditions required of him by the agreement, is entitled to a specific performance of the contract of sale, even after expiration of the time limit for closing the contract.

S. M. WARD, W. W. BELEW for appellants.

WOOTEN & MORGAN for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

W. M. Cornett and his wife, Evaline Cornett, executed to John E. Golden the following contract of sale for a tract of land lying on Leatherwood Creek in Perry County, Kentucky:

"We, Wm. M. Cornett and Lina Cornett, his wife, hereby sell to John E. Golden, for the sum of $10 per

acre the land herein described and we agree to convey
said land and the fee simple title thereto to him by deed
of general warranty and free from any lien, defect or in-
cumbrance.   Lying on Leatherwood Creek i n Perry
County, Kentucky, and bounded:

(Here follows description of lands).

"We agree to furnish to said Golden without delay
the title papers for said land, and to assist him in ab-
stracting and showing the condition of the title to said
land, and as soon as the title shall be shown to be perfect
in us, by complete chain of documentary and recorded
conveyance, the said Golden is to have the acreage as-
certained by a competent surveyor, and when all this
shall have been done we bind ourselves to execute and
deliver to said Golden such deed as is herein described,
and then he is to pay us the purchase price aforesaid
per acre, and we will thereupon surrender possession of
said land to him.   We agree to do no damage to any of
said land or anything upon it, and not to cut any timber
upon it.

"It is agreed that the work in ascertaining the acre-
age, perfecting the title and making the conveyance shall
be done before December 1, 1907."

No steps were taken by either party looking toward
ascertaining the acreage or examining the title before
December 1, 1907, the time specified in the contract.

In November, 1910, W. M. Cornett instituted suit in
the Perry Circuit Court against John E. Golden in which
he sought to have the writing or deed cancelled and ad-
judged of no binding force or effect.   In May, 1911,
Golden answered, and in addition to denying the material
averments of the petition, sought to have the contract
specifically performed.   His answer was made a counter-
claim.   In February, 1912, he filed an amended answer
and counterclaim and made it a cross petition against
Evaline Cornett, the wife of W. M. Cornett, and the Ford
Lumber & Manufacturing Company.   In this amended
answer, in addition to denying the material averments of
the petition, he alleged that at the time of the execution
and delivery of the contract of sale to him, set out above,
he paid to W. M. Cornett the sum of $200 as a part of the
purchase price of said land; that neither W. M. Cornett
nor Evaline Cornett, his wife, had at any time furnished
or offered to furnish to him their title papers to said land
and had not offered to assist him in abstracting the title
or in showing the correct number of acres in said land;

that he had been ready, able, anxious and willing, at all times since the execution and delivery of the writing to him, upon receipt of the title papers to assist in showing the condition of the title thereto and to have the land surveyed, and to perform all the obligations imposed upon him by the contract; and that, by reason of the failure of the said W. M. Cornett and his wife to furnish him their title papers, he had been delayed in discharging the obligations which the contract imposed upon him. He asked that the contract be carried out according to its terms. He further pleaded that, since the execution of the contract W. M. Cornett and his wife had conveyed, or attempted to convey, the land which they had sold to him to the Ford Lumber & Manufacturing Company, and asked that said company be made a party defendant, which was done.

In a reply plaintiffs traversed the affirmative matter set out in the original answer and counterclaim. Proof was taken, and the case submitted upon the pleadings and proof. The court was of opinion that plaintiff was entitled to the relief sought and so adjudged. The defendant appeals.

A construction of the writing is necessarily involved in a determination of the rights of the parties to this litigation. It is insisted by appellees that it is merely an option, by which appellant was given the right to buy the land at the price named therein, at any time prior to December 1, 1907, and that, not having exercised such right within the time prescribed, any rights which he had thereunder were lost to him. On the other hand, appellant insists that this is an absolute contract of purchase and sale, that he paid, on the day it was executed, $200 of the purchase money, and that his failure to cause the land to be surveyed and the acreage ascertained within the time prescribed, to-wit: prior to December 1, 1907, was due alone to the fact that appellees did not furnish him with their title papers or assist him in ascertaining that they had title to the land which they had sold and agreed to convey.

Looking to the writing itself which, in the absence of any charge of fraud or mistake in its execution, must be accepted as expressing the contract between the parties, we find that it has all the essentials of a contract of bargain and sale of real estate. It says, "We ,Wm. M. Cornett and Lina Cornett, his wife, hereby sell to John E. Golden, for the sum of $10 per acre the land herein de-

scribed and we agree to convey said land and the fee simple title thereto to him by deed of general warranty and free from any lien, defect or incumbrance.'' The language used in this first clause of the contract is plain, clear, unambiguous and certain. The only construction of which this language is susceptible is that the grantors have sold their land to the grantee for $10 per acre and have agreed to make him good and sufficient deed thereto. The sale having been made and the terms agreed upon, the contract then provides for the doing of certain things in order to satisfy the purchaser, Golden, that Cornett and wife owned the title to the lands with which they were dealing and to ascertain the exact number of acres. The contract provides that Cornett and wife should deliver to Golden their title papers for the lands and assist him in abstracting and showing the condition of the title, and when the title should be shown to be perfect in the grantors, the acreage was to be ascertained by a surveyor, and following this, the deed should be executed and delivered, and the land paid for and possession given to the purchaser.

All acts to be done or performed by either party were necessary to establish two propositions, first, that the grantors owned the title to the lands which they, by this writing, agreed to convey, and second, to ascertain the exact number of acres in the tract. None of these stipulations throws any light upon the question as to whether or not it was an option or a contract of sale into which the parties entered. They are aids, as it were, to the parties in carrying the contract into execution. From an examination of the contract as a whole, it is apparent that the parties did not at that time regard it as an option but as a contract of bargain and sale of the land. Indeed, the language, when fairly construed. is not susceptible of any other interpretation.

The only remaining question is, has the conduct of the parties to this contract, since its execution, been such as to warrant the court in holding that there was a mutual abandonment of the contract? Executed in 1907, no steps were taken by either party for more than two years, although each knew that by the terms of the contract the validity of appellees' title was to be established and the acreage ascertained before December 1, 1907. Appellees offer no excuse whatever for their failure and refusal to deliver to appellant their title papers or to assist him in abstracting their title, although appellant al-

leges that sometime after December 1, 1907, he called upon or notified appellees to deliver their title papers to a certain bank in order that they might be used in abstracting the title. Appellees disregarded this notice and at no time furnished, or offered to furnish, appellant with the evidences of their title to said property, nor did they do anything looking toward aiding him in establishing their title; but, with $200 of appellant's money in their possession, they contented themselves with letting the matter stand and now seek to have the contract of sale, into which they entered, declared null and void and of no binding force or effect, although they admit that, since its execution, they at no time complied or offered to comply with the provisions which the contract, in plain terms, imposed upon them. Are they in a position to do so? May they shelter behind the inaction of appellant and seek to be benefitted because thereof, while while they themselves were in default?

While the obligations imposed by the contract were mutual and reciprocal, they required that appellees should take the initiative. It was incumbent upon them to deliver their title paper to appellant before he was required to do anything. While their failure to deliver their title papers to him or to assist him in any wise in tracing their title might not altogether excuse appellant from attempting to comply with his part of the contract, it certainly stands in the way of appellees in attempting to procure the relief here sought. They are seeking to be relieved from the burden of a contract which they say casts a cloud upon their titles, and at the same time are confessedly in default in the performance of duties which the contract imposed upon them.

In 39 Cyc., 1353, the author states that the acts of parties to a contract, in order to constitute its abandonment, "must be positive, unequivocal, and inconsistent with the continuance of the contract." Measured by this standard, it is apparent that the contract under consideration was not abandoned, for neither party, during the interim between the making of the contract and the date upon which appellees instituted their suit, did or said anything inconsistent with the obligations of the contract, and the intervening time was not so great as to warrant the court in holding that their conduct amounted to an abandonment. Appellees could not have refused to carry out the contract and defeated appel-

lant's rights thereunder, by a failure to furnish him with their title papers or to assist him in ascertaining that their title to said land was good. Good faith on their part required of them more than mere inaction or silence. They were, at least, bound to offer to comply with those terms which the contract imposed upon them, as a condition precedent to the survey of the land, the making of the deed, and the payment of the balance of the purchase price. To relieve themselves of liability, it was incumbent upon them to have offered to comply with their part of the contract and to satisfy appellant that the title to the land in question was good in them. Had they done so, and appellant then had refused to carry out the obligations which the contract, by its terms, imposed upon him, they might, with propriety, have applied to the chancellor for the relief which they are now seeking, but they themselves being in fault are in no position to do so.

If time had been the essence of the contract in this case, and the contract itself had provided that the land was to be surveyed and paid for before December 1, 1907, appellees would still be in no position to complain or claim a forfeiture, for the reason that, by the terms of the contract, it was incumbent upon them to furnish appellant with evidences of their title and to assist in tracing same. So, viewed from any standpoint, it is apparent that such rights as appellant had, under and by virtue of this contract, were neither forfeited nor lost to him by reason of his failure to have his title examined and the acreage ascertained within the time fixed in the contract. See notes to Boldt v. Early, 104 Am. St. Rep., 255.

Appellees having received $200 as a payment on this land at the time the contract was entered into, fair dealing on their part required of them to give notice to appellant that they were ready and willing to have their titled examined, the acreage ascertained and the contract closed. If, after such notice, appellant had taken no steps to carry out the contract, they might, with plausibility, have claimed abandonment on his part. Having failed to avail themselves of this right, they are in no position to claim either a forfeiture or an abandonment. Upon this showing, the chancellor should have denied to them the relief sought and decreed a specific performance of the contract for the land, or so much

thereof as, upon investigation, it is found appellees have title to.

Judgment reversed and cause remanded for further proceedings consistent herewith.