## Golden v. W. R. Lewis and Martha Lewis.

(Decided May 29, 1917.)

## Appeal from Letcher Circuit Court.

1. Contracts—For Sale of Land—Remedy of Seller When Buyer Refuses to Comply with Terms.—When land has been sold by executory contract, the remedy of the seller—in the absence of facts that would justify its cancellation—when the buyer fails and refuses to take the property according to the contract, is to bring a suit to recover the purchase money.

2. Costs—Appeal and Error—Index to Exhibits—Penalty on Clerk for Failing to Observe Rule.—For a failure to index exhibits, five dollars will be deducted from the fee of the clerk for making out the transcript.

WM. W. BELEW, BLAIR & HAWK and BLACK, BLACK & OWENS for appellant.

D. D. FIELD, D. I. DAY and MORGAN & NUCKOLS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On September 6, 1907, the appellees executed and delivered to Golden, the appellant, the following contract: "We, Wm. Lewis and Martha Lewis, his wife, hereby sell to John E. Golden for the sum of ten dollars, per acre, the land herein described, and we agree to convey said land and the fee simple title thereto to him by deed of general warranty and free from lien, defect or encumbrance, lying on Line Fork Creek in Letcher county, Kentucky, and bounded on the North by the lands of High Lewis, on the East by the lands of Dick Smith, on the West by the lands of Dick Smith, on the South by the county road, and containing about two hundred acres.

"We agree to furnish the said Golden without delay the title papers of said land and to assist him in abstracting and showing the condition of the title to said land, and as soon as the title shall be shown to be perfect in us by a complete chain of documentary and recorded conveyances, the said Golden is to have the acreage ascertained by a competent surveyor, and when all this shall have been done we bind ourselves to execute and deliver to said Golden such deed as herein described, and then he is to pay us the purchase price aforesaid per acre, and we will thereupon surrender possession of all said land to him.

"We agree to do no damage to any of said land or anything upon it, and not to cut anything on it.

"It is agreed that the work of ascertaining the acreage, perfecting the title and making the conveyance shall be done before December 1, 1907."

In July, 1910, the Lewises filed their petition in the Letcher circuit court against Golden asking that this contract be cancelled on the ground that by its terms Golden was to perform his part of the contract before December 1, 1907, and that he had made no effort to have the acreage ascertained by a competent surveyor or notified the Lewises that he ever intended to do so, although they had at all times been ready, able and willing, prior to December 1, 1907, to perform the obligations imposed upon them by the terms of the contract.

After this an amended petition was filed setting forth as additional grounds for cancelling the contract that they were illiterate, uneducated people who could neither read nor write. That when they executed the contract they were induced by the representations of the agents of Golden who secured the contract to believe that it was only an option giving Golden the right to buy and pay for the land before December 1, 1907. That a fraud was practiced on them by the misrepresentations of the agents of Golden, and that the failure of Golden to comply with the contract should be treated as an abandonment thereof.

To these pleadings Golden filed answers and counterclaims in which, after traversing the averments of the petition as amended, and averring that he was at all times able and willing to perform his part of the contract, he expressed his ability and willingness to pay for the land and sought a specific performance of the contract.

After the evidence had been taken the case was submitted and there was a judgment cancelling the contract, and Golden appeals, insisting that the judgment should be reversed with directions to enter a judgment on his counterclaim specifically enforcing the contract.

It appears from the evidence that the Lewises, although illiterate and uneducated, are people of ordinary intelligence and fair business capacity, and that the contract was read to and understood by them before it was signed. We may stop here to say that the evidence does not support the contention of the Lewises that any fraud was practiced on them in securing this contract. We think they thoroughly understood its terms and conditions at the time and before they signed it. It may also here be

said that Golden at the time this contract was procured was not in a financial condition to comply with the terms imposed upon him by the contract, but it appears that on November 1, 1907, Golden entered into a contract with one Hoblitzel, a man of considerable means, and under this contract Hoblitzel took over the contract the Lewises had entered.into with Golden and agreed to perform the conditions Golden had assumed. When this arrangement between Golden and Hoblitzel was entered into Hoblitzel secured a surveyor to make a survey of this and other lands that he had taken over from Golden under similar contracts to the one here involved, and the surveyor, Blakeman, did make at least partial surveys.

It further appears that Blakeman was furnished with some abstracts of title and title papers by one S. H. Fields, who had been employed by either Hoblitzel or Golden to look up the title to various tracts of land that Golden had contracted to purchase, including the land purchased from the Lewises. Before, however, the titles had been perfected or the surveys completed, Hoblitzel died, and his death put an end to the arrangement under which he was to take over the contract Golden had made with the Lewises and others, and then the matter lay in abeyance without anything being done by Golden until June, 1910, when he gave to the Lewises a notice in writing that he was able, ready and willing to pay for the land purchased under his contract of September, 1907, whenever the Lewises tendered to him a good deed to the land; but the Lewises having previous to this time sold the land to Swift, did not pay any attention to the notice given to them by Golden.

It is further shown in the record that previous to June, 1910, Golden made arrangements with other parties to furnish him money to pay the Lewises for the land he had purchased, but when these parties went to investigate the title and discovered that the Lewises had sold the land to Swift, they withdrew from the arrangements made with Golden to take over the land.

It also appears that in March, 1911, Golden entered into a contract with W. R. Marsee by which Marsee was to take over the contracts Golden had made with the Lewises and others and assume the performance of all the obligations put on Golden by these contracts. Marsee was able to pay for the land and would have done so except for the fact that after entering into the contract with Golden he discovered that in October, 1909, the

Lewises had conveyed the land to one David R. Swift, and when this discovery was made Marsee abandoned the whole matter.

It is convenient at this point to say that in October, 1909, the Lewises sold this land to David R. Swift for ten dollars an acre, the same price Golden had agreed to pay, fifty dollars of the purchase price being paid in cash. The terms of the contract with Swift were substantially the same as the terms of the contract that the Lewises had made with Golden. Swift, at the time he took this contract from the Lewises for the sale of the land, of course knew that it had previously been sold to Golden, and it further appears from the evidence that Swift, and not the Lewises, is the real party plaintiff in this case; that Swift is paying the costs and expenses of the Lewises in this litigation with Golden, obviously in order that he might get rid of the prior contract between the Lewises and Golden, so that under his contract he could secure the title to and possession of the land.

It seems hardly necessary to relate the evidence further, and we may conclude this branch of the subject with the general statement that soon after the Golden contract was made, and in 1907, some effort was made on the part of both the Lewises and Golden, who at that time, as we have said, had secured the means from Hoblitzel, to close up the transaction. Some surveys were made and some title papers examined, but on account of the death of Hoblitzel and possibly for other reasons, the matter ended without anything further being done by either the Lewises or Golden, and neither the Lewises nor Golden took any further steps towards perfecting the title, or making a survey, or tendering the deed, or paying any money, until June, 1910, when Golden notified the Lewises that he was able, ready and willing to perform his part of the contract, but before this time the Lewises had sold and conveyed the land to Swift, as before stated. In short, it appears that the Lewises were indifferent as to whether Golden took the land or not, and Golden, after Hoblitzel died, was not in a position to buy and pay for it until 1910, when he made arrangements with Marsee as well as others to get the money, and we have no doubt that the transaction would then have been closed in 1910 except for the fact that the Lewises had previously sold the land to Swift.

Really all the evidence and discussion in the briefs as to what the Lewises could do or could not do, or as to

what Golden did or did not do, or as to the inability or lack of desire on the part of the Lewises to perform the contract, and the inability of Golden to perform it, have little to do with the controlling fact in the case, which turns on the validity and construction of the contract made between the Lewises and Golden. If this contract was a valid contract for the sale of the land, then it is plain that the remedy of the Lewises was to bring a suit against Golden to recover the purchase price, as they had the right to do at any time after December 1, 1907. But this they never did.

Golden does not appear in a very enviable attitude in this case or show himself entitled to much consideration. He was plainly a mere speculator without the ability to comply with the contracts he was making. But these circumstances do not help the Lewises, who failed to avail themselves of the complete remedy always at their hand after December 1, 1907, which was, as we have said, to bring a suit against Golden for a specific performance of the contract and the recovery of the amount due under it upon tendering to Golden a good title.

The fact that Golden was insolvent, or that he could not perform his part of the contract, does not have the effect of changing the terms of the contract or altering the remedy the Lewises had. Of course, if the contract could be set aside for fraud, or if it was a mere option that expired on December 1, 1907, the Lewises would have had the right to treat the contract as a nullity within a reasonable time after December 1, 1907, or a right to bring a suit, as they did bring in 1910, for the purpose of having the contract cancelled on the ground of fraud; but as the contract was not an option and the evidence not sufficient to show a fraud in its execution, the only remedy the Lewises had was the one we have stated.

There is no essential difference between this case and the case of Golden v. Cornett, 154 Ky. 438. In that case, as appears from the opinion, Cornett and his wife executed to John E. Golden, the appellant here, in September, 1907, a contract identical with the contract executed by the Lewises to Golden, except as to the names of the vendors and the description of the land. It appears that in November, 1910, Cornett instituted suit against Golden to have the writing cancelled and adjudged of no binding force and effect, and Golden made his answer a counterclaim controverting the averments of the petition, and asked for a specific performance of the contract. In

other words, the pleadings and issues in that case were the same as the pleadings and issues in this case, the only difference being that in that case it seems that Golden had paid Cornett two hundred dollars on the purchase price, while in this case he had only paid the Lewises twenty dollars. The evidence in that case was also substantially the same as the evidence in this case, and the court said:

"A construction of the writing is necessarily involved in a determination of the rights of the parties to this litigation. It is insisted by appellees that it is merely an option, by which appellant was given the right to buy the land at the price named therein, at any time prior to December 1, 1907, and that, not having exercised such right within the time prescribed, any rights which he had thereunder were lost to him. On the other hand, appellant insists that this is an absolute contract of purchase and sale, that he paid, on the day it was executed, two hundred dollars of the purchase money, and that his failure to cause the land to be surveyed and the acreage ascertained within the time prescribed, to-wit: prior to December 1, 1907, was due alone to the fact that appellees did not furnish him with their title papers or assist him in ascertaining that they had title to the land which they had sold and agreed to convey.

"Looking to the writing itself, which, in the absence of any charge of fraud or mistake in its execution, must be accepted as expressing the contract between the parties, we find that it has all the essentials of a contract of bargain and sale of real estate. It says, 'We, Wm. M. Cornett and Lina Cornett, his wife, hereby sell to John E. Golden, for the sum of ten dollars per acre, the land herein described and we agree to convey said land and the fee simple title thereto to him by deed of general warranty, and free from any lien, defect or incumbrance.' The language used in this first clause of the contract is plain, clear, unambiguous and certain. The only construction of which this language is susceptible is that the grantors have sold their land to the grantee for ten dollars per acre and have agreed to make him a good and sufficient deed thereto. The sale having been made and the terms agreed upon, the contract then provides for the doing of certain things in order to satisfy the purchaser, Golden, that Cornett and wife owned the title to the lands with which they were dealing and to ascertaining the exact number of acres. The contract

provides that Cornett and wife should deliver to Golden their title papers for the lands and assist him in abstracting and showing the condition of the title, and when the title should be shown to be perfect in the grantors, the acreage was to be ascertained by a surveyor, and following this, the deed should be executed and delivered, and the land paid for and possession given to the purchaser. . . .

"Appellees having received two hundred dollars as a payment on this land at the time the contract was entered into, fair dealing on their part required of them to give notice to appellant that they were ready and willing to have their title examined, the acreage ascertained and the contract closed. If, after such notice, appellant had taken no steps to carry out the contract, they might, with plausibility, have claimed abandonment on his part. Having failed to avail themselves of this right, they are in no position to claim either a forfeiture or an abandonment. Upon this showing, the chancellor should have denied to them the relief sought and decreed a specific performance of the contract for the land, or so much thereof as, upon investigation, it is found appellees have title to."

Counsel for the Lewises, recognizing the controlling authority of the Cornett case, undertake to point out certain differences between the facts of that case and the facts of this. It is true there are some non-essential differences in the facts of the two cases, but the substantial facts are the same. It is also said, as shown by the testimony of Wharton Golden, that the Lewises at different times said they wanted the money and would make the deed when they got it, although it does not appear with certainty when these statements were made by the Lewises, nor is it important because, as we view the case, neither the offers of the Lewises to perform their part of the contract, nor the failure of Golden to comply with the terms of the contract so far as he was concerned, would work a cancellation of the contract.

When land has been sold by executory contract, the remedy of the seller—in the absence of facts that would justify its cancellation—when the buyer fails or refuses to take the property according to the contract, is to bring a suit to recover the purchase money; or, in other words, for a performance of the contract. But in place of tendering to Golden a title and bringing suit for specific performance, the Lewises put it out of their power to

do either by selling the land to Swift at the same price that they had sold it to Golden and under a contract similar to the one made with Golden.

Under all the circumstances of the case, it seems to us that the lower court erred in cancelling the contract and in failing to order a specific performance as prayed for in the counter-claim of Golden.

We find in the record a motion to dismiss the appeal, which motion was passed to be heard with the merits. This motion must be overruled for reasons appearing in the exhibits filed with the motion and response.

There are in this large record several exhibits, consisting of contracts and notices, none of which are indexed in any way. It is provided, in part, in Rule 5 of the rules of this court, which were adopted in 1913, that "The index shall also show the page on which the instructions and all deeds, contracts and other exhibits may be found; and each deed, contract or other exhibit shall be indicated in the index, by the names of the grantor and grantee, or by some other brief description, sufficient to show what the paper is." And it is a curious thing that so many circuit clerks fail to observe these simple rules as to how records shall be made out. For the failure of the clerk to properly index the record five dollars will be deducted from his fees for making up the transcript.

The judgment is reversed, with directions to enter a judgment in conformity with this opinion.