**DAVIS v. LACY et ux.**
Civ. A. No. 118.

United States District Court
E. D. Kentucky.

May 26, 1954.

William G. Reed, J. L. Donaldson, Carrollton, Ky., for plaintiff.

Alfred W. Minish, Carrollton, Ky., Ralph Mitchell, Shelbyville, Ky., for defendants.

FORD, Chief Judge.

This action was instituted by a petition in equity originally filed in the Circuit Court of Carroll County, Kentucky. The requisite amount being in controversy, the defendants invoked jurisdiction of this Court by appropriate removal procedure on the ground of diver-

sity of citizenship of the parties. 28 U.S.C.A. §§ 1441–1446.

The plaintiff seeks to recover her down payment made under a contract for the purchase of real estate, which contract was not consummated.

By counterclaim, the defendants, the sellers of the property, seek to retain out of the purchaser's payment the damages claimed to have been sustained by them as a result of alleged unjustifiable refusal of the plaintiff to consummate the sale.

A brief survey of the background of the controversy, in addition to a summary of the immediate facts and circumstances out of which this litigation arose, may serve to illumine and clarify the issues presented for determination.

Several years before his death in 1930, George B. Winslow, a lawyer and prominent citizen of Carrollton, Ky., conveyed his home place in Carrollton, consisting of his dwelling house and approximately five acres of land, to his wife, Mrs. Lucy H. Winslow.

Mr. and Mrs. Winslow took Mildred Smith (now the defendant Mrs. Mildred W. Lacy) into their home when she was about three years of age. When she was about twelve years old, upon the petition of Mr. and Mrs. Winslow, it was adjudged by the Circuit Court of Carroll County, Kentucky, "that the infant, Mildred Smith, be and she is hereby declared to be the heir-at-law of George B. Winslow and Lucy H. Winslow as if their own child, and that her name shall hereafter be Mildred Smith Winslow * * *." She continued to live with them until Mr. Winslow's death and thereafter with Mrs. Winslow until she married Mr. Lacy and moved to Kansas City, Missouri. Mrs. Winslow continued to maintain her home in Carrollton until later years when, on account of declining health, she moved to Missouri to make her home with her daughter.

On September 9, 1952, Mrs. Winslow conveyed her home property in Carrollton to the defendants. At that time Mrs. Winslow was living in a nursing home.

Nevertheless, the testimony is convincing that she desired to so convey her property and was possessed of adequate mental capacity to do so. She had no children except Mrs. Lacy, whom she obviously considered the natural object of her bounty.

The defendants employed the Barnett Real Estate Agency to advertise and sell the property at public auction. The auction was held on the premises in the forenoon of Saturday, October 18, 1952, immediately following public announcement of the terms by the auctioneer. The plaintiff Miss Dorothy Davis was the highest bidder at the price of $24,000. In the late afternoon of the same day, in a room of the Winslow house, plaintiff met with the defendants and their attorney, Mr. Alfred Minish. Miss Davis was presented with a prepared contract which contained the terms of the sale as announced by the auctioneer. Before signing it, however, Miss Davis requested that the defendants agree to furnish title insurance. They readily assented and the contract was amended accordingly.

After the contract was so amended to provide for defendants to furnish title insurance, it was signed by the parties and plaintiff paid to the defendants $3,600 on and in part of the purchase price. By the terms of the contract, fee simple title to the property was to be conveyed to the plaintiff by defendants "by a good and sufficient deed of general warranty and insured title" on or before November 15, 1952, and at that time plaintiff was to pay the balance of the purchase price.

It appears that plaintiff and defendants were friends of long standing and, the day following the sale, Mr. Lacy went to the home of the plaintiff to discuss the care of the utilities at the house. During the course of the conversation, Miss Davis, after referring to the hardships her mother would have in taking care of so large a house and the steps she would have to climb, asked Mr. Lacy to release her from the purchase of

it. He explained to her the reasons that he could not grant her request.

Mr. Lacy returned to his home in Kansas City the following day, and left the matter of arranging for title insurance and other details in respect to consummation of the sale in the hands of his attorney, Mr. Minish. He promptly arranged with Mr. William G. Reed, a local attorney who represented the Franklin Title and Trust Company of Louisville, Ky., to take up with that company the matter of issuing the title insurance. Mr. Reed examined the Court records and did not find the record of Mrs. Lacy's adoption by the Winslows. The record was later found and certified copies were mailed to Mr. Reed and Miss Davis. After communicating with Miss Davis, but without informing the defendants or their local attorney, Mr. Minish, that either he or Miss Davis entertained any doubt as to the insurability of the title, or had any reason for questioning it, on November 7, 1952, Mr. Reed wrote the following letter to the Franklin Title and Trust Company:

"November 7, 1952

"Mr. S. Stasser, Vice-Pres.,
"Franklin Title and Trust Co.,
"508 W. Jefferson St.,
"Louisville, Ky.

"In re: Dorothy Davis
"Dear Mr. Stasser:

"Dorothy Davis purchased at public auction a dwelling and some five acres of land abutting on U. S. Highway 42, in the corporate limits of Carrollton, at a price of $24,-000.00.

"This property is known as the George B. Winslow homestead, and in the year 1925, George B. Winslow conveyed the property to his wife, Lucy H. Winslow. She continued as the title owner until June, 1952, when she conveyed the same to Mildred Lacey and John Lacey, and in August, 1952, the Laceys sold the property at public auction, when Miss Davis became the purchaser. The records in the Carroll County Clerk's office reveal the fact that Mildred Lacey and John Lacey owned a fee simple title to the property, but this fact has come to my mind:

"Lucy H. Winslow is in her eightieth year, and due to her age, her mental condition is such that she doesn't have mental capacity to even care for herself, requiring an attendant. She lives in Kansas City, Missouri with Mildred Lacey. Mrs. Winslow has a number of heirs at law. Mildred Lacey was taken in the home of George B. and Lucy Winslow when she was about three years old, and continued to live with the Winslows until she married. It is generally understood in Carrollton that Mr. and Mrs. Winslow adopted Mildred, but a search of the records disclose no evidence whatever of adoption proceedings. The Winslows had no children of their own, and Mrs. Winslow's heirs consist of a number of nieces and nephews. George B. Winslow died in the year 1930.

"Miss Davis is taking the position that there is a possibility in the event Mrs. Winslow passed away before the period of limitations for contesting the deed, expires, those nieces and nephews might attack the validity of the deed to the Laceys.

"This property was bought with the understanding and the contract so provides that before Miss Davis is required to accept the deed, the title must be insured. Based on the foregoing statement of facts, assuming all other features are in perfect condition, would you be willing to insure title?

"Yours very truly,
"(Signed) William G. Reed
"WGR:cs"

Mr. Reed had no personal knowledge as to the mental or physical condition of Mrs. Winslow. His statements in that respect were based, in part at least, on

information given him by plaintiff, Miss Davis.

On November 11, 1952, the plaintiff herself went to the office of the Franklin Title and Trust Company in Louisville and, although Mr. Staser, who passes on issuance of title insurance, was not there, she testified that on his desk she saw, but did not read, a letter from Mr. Reed pertaining to the property. With whom she consulted at the office of the company and what she said is not disclosed by the record, but obviously her visit did not help matters, for on the next day Mr. Reed's letter was returned to him by mail bearing the following pencil notation:

"We must decline to insure this title in its present condition.

"11–12–52 (Signed) Staser"

Upon receipt of the letter on November 13th, Mr. Reed promptly reported the response of the company to Miss Davis, also to Mr. Minish, who reported it to Mr. Lacy. On the next morning Mr. Lacy flew to Louisville and ascertained that the Franklin Title Company was not interested in issuing the insurance. He immediately proceeded to Carrollton and got in touch with Judge Ralph Mitchell, an attorney of Shelbyville, Ky., who represented the Lawyers' Title Insurance Corporation of Richmond, Va., and arranged with him to proceed at once to procure the desired insurance. On the following morning, November 15th, the date specified in the contract for the consummation of the sale, Mr. Lacy saw the plaintiff Miss Davis in the office of her attorney, Mr. Reed, and, according to his uncontroverted testimony, he assured her, in substance, that he was proceeding to procure the title insurance and would expect fulfillment of the contract. So far as appears from the record, Miss Davis expressed no surprise at the inability of the defendants to then comply with the contract in full and indicated no purpose or intention to relinquish or abandon it merely on that account.

Under date of November 20, 1952, Judge Mitchell procured a so-called "Interim Title Insurance Binder" from the Lawyers' Title Insurance Corporation in respect to the property in question. According to the testimony, this is a proceeding frequently followed preliminary to the issuance of a policy of title insurance. In itself it does not constitute insurance of title. On the following day, November 21st, this "Interim Title Insurance Binder", together with a duly executed and acknowledged deed of conveyance for the property described in the contract was tendered to the plaintiff by defendants' attorney Mr. Minish, to which her only response was "I told them—I didn't do anything, I just told them that I was abiding by my contract that I would get a deed and title insurance on November 15th."

Thereafter, on the same day, the plaintiff mailed the following hand-written letter to Mr. Minish:

"Carrollton, Ky.
"Nov. 21, 1952.
"Mr. Alfred W. Minish
"Attorney for John Lacey
 and Mildred Lacey
"Carrollton, Kentucky
"Dear Sir:

"Due to the failure of John Lacey and Mildred Lacey to deliver deed as provided for in my contract for the purchase of the G. B. Winslow residence on High Street in Carrollton, Kentucky, I hereby make demand upon you for the return of $3,600.00 paid by me on execution of the contract.

"Yours truly,
 "Dorothy Davis"

This letter was immediately forwarded to Mr. Lacy at his home in Kansas City. On November 28, 1952, Mr. Lacy wrote a letter to the plaintiff urging her to carry out the sale, but she made no reply.

It seems quite clear from the evidence that the plaintiff's unqualified and unequivocal renunciation of the contract by her letter of November 21st

was not based upon a claimed defect in the title nor upon the failure of defendants to provide complete title insurance. It seems equally clear that she was proceeding solely upon the idea that defendants' failure to perform the contract on November 15th, the date stipulated, released her from all obligations under it. In this respect she was mistaken, unless the exact date agreed upon for performance was of such importance as to be of the essence of the contract. Ordinarily such serious and important contractual obligations may not be lightly cast aside. The general rule for determining materiality of delay in performance of contracts is stated in the Restatement of the Law of Contracts, § 276(a), p. 406, thus:

"Unless the nature of a contract is such as to make performance on the exact day agreed upon of vital importance, or the contract in terms provides that it shall be so, failure by a promisor to perform his promise on the day stated in the promise does not discharge the duty of the other party."

In Williston on Contracts, Vol. 3, page 2385, § 852, it is written:

"In contracts for the sale of land, equity has established the rule that unless expressly made so by the terms of the contract or by special circumstances, time is not essential."

■ The law, long since declared and followed by the courts of this State, is that " 'unless the intention to make time the essence of the contract is clearly expressed, or necessarily implied, it will not be so regarded.'" Sheeran v. Irvin, 230 Ky. 307, 316, 19 S.W.2d 976, 980; Rogers Bros. Coal Co. v. Day, 222 Ky. 443, 447, 1 S.W.2d 540; Main v. Sevier, 221 Ky. 828, 831, 299 S.W. 972.

■■ There is nothing in the contract here involved expressly making time of its essence, nor is such a provision to be implied from the nature of the property or from surrounding circumstances. Consequently, plaintiff's renunciation of the contract because the defendants were unable to fully perform it on the day stipulated was unjustified. If, however, her renunciation of the contract was on account of some other claimed deficiency in defendants' performance, her position seems no more favorable to her cause, for, in respect to such claimed deficiency, good faith on her part certainly required more than inaction and silence.

■ Where neither fraud nor negligence is involved, the least that ordinary fair dealing between contracting parties would seem to demand is that the one dissatisfied, with the performance of the other, point out the reason therefor with definiteness, and if there be a reasonable probability that the deficiency may be remedied, a reasonable time be allowed for that purpose. Of course, plaintiff was not obligated to pay the balance of the purchase price until the defendants fully performed the contract, but under the circumstances here disclosed she was not justified in precipitately and unequivocally renouncing her agreement. Bean v. Brown, 202 Ky. 215, 219, 259 S.W. 47; Golden v. Cornett, 154 Ky. 438, 442, 157 S.W. 1076. The evidence is insufficient to sustain plaintiff's claim, asserted in her reply to defendants' counterclaim, that the title was defective or uninsurable.

■ Since the law does not require the doing of a vain thing, after plaintiff's unequivocal renunciation of the contract, defendants were not required to complete procurement of title insurance for her or to again tender her the deed for the property. Johnston v. Benjamin, 219 Ky. 169, 173, 292 S.W. 801. They then had the right to elect to pursue one of two remedies. As said in Harmon v. Thompson, 119 Ky. 528, 539, 84 S.W. 569, 572:

"* * * A contract to sell land, unlike one to sell personal chattels, gives to the vendor choice of two remedies for its breach by the vendee: One, an action against the vendee for specific execution of the contract, in which case the vendor

must aver and show that he has the title contracted to be sold, and must tender it. The other is a suit to recover the damages sustained by the vendor by his vendee's breach of the contract where the breach is occasioned by the vendee's abandonment."

 Defendants elected to seek the latter remedy. They readvertised and resold the property for $23,430. No claim is made that the sale was unfair or that the amount realized does not represent its fair market value. The damages recoverable under the defendants' choice of remedy are measured by the difference between the purchase price which plaintiff agreed to pay and the amount received for the property at the second sale, and in addition "the cost and expense of the second sale," McBrayer v. Cohen, 92 Ky. 479, 18 S.W. 123, 124; Allison v. Cocke's Ex'rs, 112 Ky. 212, 228, 229, 65 S.W. 342, 66 S.W. 392. Applying the measure of damages thus prescribed, under the evidence presented, the defendants are entitled to retain out of the plaintiff's down payment the following items of damage: Loss in sale price $570, and expense for services of real estate agent $905, a total of $1,475.

 Other items claimed by defendants are not shown by the evidence to have been expenses necessarily incurred as cost of the second sale or which could reasonably be assumed to have been within the contemplation of the parties, and hence are not recoverable. Linde v. Ellis, 224 Ky. 649, 651; 6 S.W.2d 1089. The plaintiff is entitled to judgment for the remainder of the down payment in the sum of $2,125 and her costs.

The conclusions reached render it unnecessary to consider or determine the contention of the defendants in respect to the validity or effect of the auctioneer's sale memorandum referred to in the record.

Judgment will be entered in conformity herewith.