YELLOW-HAIR, Appellant, v. PRATT, et al., Respondents.

(182 N. W. 702.)

(File No. 4840.   Opinion filed April 25, 1921.)

1.   Trials—Conclusions of Law, or Findings, Necessity Of—"Legal Conclusions" With Citations, Distinguished From "Conclusions of Law"—Citations Inapplicable.

Although trial court, after making findings, announced under the heading of "legal conclusions" certain legal propositions, supported by citation of authorities, from which "legal conclusions" it is clear the court had reached the conclusion that the land in controversy when levied on was not plaintiff's homestead; and while such announcement of reasons and citation of authorities supporting same, is of value to counsel in further conduct of the case, yet such statement should not take the place of or be incorporated into the conclusions of law contemplated by statute, since it would be unfair to appellant to incorporate in its brief as part of the record that which amounts to a brief and argument in opposition; nor are such cited authorities applicable to the case at bar.

2.   Homestead—Abandonment Of, Intent Re—Removal Without Animo Revertendi As Forfeiture.

The main question in all cases involving question of the abandonment of homestead, is the intent of party ceasing to occupy it; and while no general rule can be laid down to guide the court, yet actual removal without intention to return is a forfeiture of homestead right; and if removal is without present intent to return, but with mere possible or at most probable future purpose to do so, contingent on happening or not happening of a particular event, homestead is abandoned.

3.   Same—Long Absence as Indicative of Abandonment—Rule.

Any absence, while not conclusive proof of intent to abandon homestead, is a circumstance which may indicate such an intent, in absence of showing of intent to return; the real question being, did the party have a fixed and actual purpose or intent to return and reside on the property, and did that purpose or intent continue to exist to the time in question?

4.   Same—Homestead Character, Vital Question Whether Land Had Lost At Alleged Date—Absence Since Execution Levied Immaterial Re Intent to Abandon.

The question before trial court being, whether the land in question had lost its homestead character when the levy in question was made, the intention of claimants at time of trial is immaterial, absence from the land since such levy furnishing no evidence of intention to abandon homestead right.

5. Same—Finding Of No Purpose Or Intent to Return Since "Leaving and Renting the Place"—Non Animo Revertendi As Forfeiture, Regained By Repossession—Honest Belief of Future Re occupancy,* Effect.

In determining effect of a finding that, "since her leaving and renting the place, she has never had any fixed or definite purpose or intention of returning and occupying it as a home," held, that if she (plaintiff) did not intend to return when she left the place, she forfeited homestead right and could only regain it by repossession; that while one leaving a homestead must in good faith intend to return at some future date, such date need not be "fixed or definite" re time, in order to be an intent to return regardless of possible contingencies, but an honest belief that some time in future party will re-occupy it as a home, coupled with absence of inconsistent action, will preserve homestead right from forfeiture.

6. Same—Renting Homestead, Reserving Room With Furniture— Absence With Daughter to Regain Health, Animo Revertendi— Public Policy Re Vacancy as Forfeiture.

That claimant rented her homestead, reserving one room in which she left all her furniture, then left and went to another town to and lived with her daughter "for a visit so she could take care of me," her health being poor, is not evidence of abandonment of the homestead, she testifying she always intended to return to it as her home; it being against public policy to require one to leave his dwelling house vacant in order to forfeit homestead right.

7. Same—Finding of Abandonment "At Time of Execution Levy," Whether Sustained—Non-abandonment When Leaving Home, And Subsequent Government Employ, Remarriage, Effect— Non-intent Never to Return, Effect.

A finding of trial court that at time of levying of the execution in question plaintiff had abandoned the lot in question as a homestead, is not sustained by proof that after leaving the home she entered government employ, nor by proof of her remarriage after so leaving; evidence showing she did not abandon it when she first left it; since neither entry into government employ, nor leaving one's homestead to fill a public office would so result; and such employment, and remarriage, is no evidence of intention never to return thereto.

8. Same—Remarriage, Whether Forfeiting Homestead Right— Non-owner of Home, Effect—Government-furnished Home,

Claimant's Furniture In, Effect Re Homestead—Former Decision Re These Facts, Law of Case.

Plaintiff s remarriage after leaving her homestead (where she had previously resided with her child, her then husband living apart from her), did not amount to abandonment of homestead right; and while if her present husband had owned a home and they had elected to occupy that as their home rather than the one she owned, she would have abandoned the latter, yet, he owning none, and the government having furnished them a place in which to live while her husband was a government employee, to which place she brought the larger part of her furniture previously stored in her homestead, the facts do not establish such abandonment. And the previous decision of this court upon these facts, in which it was announced that defendants seemed "to concede, that such remarriage did not, in and of itself, as a matter of law, work such forfeiture," and "that respondents are right in such concession is beyond question * * *," became the law of this case.

9. Same—Remarriage, Husband Accepting and Holding Government Position, He and Wife Living in Government Home Animo Revertendi on Non-employment, Effect—Dictum.

If at time of such remarriage, the home had not been held under lease, and plaintiff and husband had taken immediate possession of it, or if she had been in possession, that it would have continued to be the family homestead is beyond dispute; and if immediately thereafter husband had accepted and held a government position, he and wife living in a government home intending to return when his employment ceased, such removal would be no forfeiture of homestead.

10. Same—Offer to Sell Homestead, Efforts to Sell, Non-evidence of Homestead Forfeiture.

Testimony by one occupying a homestead as lessee, that lessor about the time of defendants' levy of execution thereon, testified that plaintiff claimant asked "if we would consider buying the property," and named some price, is not evidence upon which to base forfeiture of homestead; since owner thereof does not, by resorting to every known means to sell it, forfeit such right.

Appeal from Circuit Court, Charles Mix County. Hon. Robert B. Tripp, Judge.

Action by Maria B. Sweeney Yellow-Hair, against C. W. Pratt, and Dan Lynch as Sheriff of Charles Mix County, South Dakota, to enjoin an execution sale of plaintiff's realty. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Reversed.

*Caster & Cassidy,* for Appellant.

*J. E. Tipton* and *A. E. Beck,* for Respondent.

(4)   To point four of the opinion, Appellant cited: Robinson v. Charleton, 73 N. W. (Ia.) 616; Garner v. Freeman, 118 Am. St. Rep. (La.) 361.

(5)   To point five, Appellant cited: Warner v. Hopkins, et al., (S. D.) 176 N. W. 746.

Respondents cited: Sec. 3215, Pol. Code 1903.

(7)   To point seven, Respondents cited: Flyffe v. Beers, 85 Am. Dec. 577.

(8)   To point eight, Appellant cited: Dieter v. Fraine, (N. D.) 128 N. W. 684; Davis v. Neal, L. R. A. (N. S.) 1916 A. (Ark.) 999 and annotations.

WHITING, J.   This action was brought to enjoin an execution sale of real property belonging to plaintiff. The sole question before the court was whether such land, at the time of the levy, was the homestead of plaintiff. A trial was had in May, 1917. From a judgment in favor of defendants an appeal was taken to this court. Our opinion will be found reported in 41 S. D. 190, 169 N. W. 515. Reference is made to such opinion for a statement of the facts as found by the court upon such trial. Because the trial court failed to make any finding as to the intention of plaintiff when moving off from this land and while remaining off same, this court held that the judgment of the trial court must be reversed; there were not sufficient evidentiary facts found from which we would be bound to determine that the plaintiff had formed the intention of abandoning her homestead rights in the premises. A second trial was had in September, 1920. The trial court received evidence in addition to that which it had received upon the first trial, and made three findings additional to those made on the first trial. Again the trial court rendered judgment in favor of the defendants. It is from such judgment and an order denying a new trial that the present appeal has been taken.

[1]   The trial court entered no conclusion of law upon this second trial. Based upon its findings, the court should have entered a conclusion of law determining whether or not this land was the homestead of plaintiff at the time it was levied on. Under the heading of "Legal Conclusions," the trial court announced several legal propositions, which it supported by the citation of

numerous authorities; and it made one or two references to the facts of the case. From these so-called "legal conclusions" we are certain that the trial court had in fact reached the conclusion that this land, at the time it was levied on, was not the homestead of plaintiff. We would not have it understood that we do not commend the trial courts in furnishing counsel or even in filing with the records of the case a statement announcing the reasons upon which they reach their conclusions and citing authorities supporting such conclusions; such a memorandum cannot but be of value to counsel in the further conduct of the case. We would, however, suggest that such a statement should not take the place of, or even be incorporated into, the conclusions of law contemplated by the statute; it certainly is unfair to an appellant to be required to incorporate into its brief, as a part of the record on its appeal, that which, in effect, amounts to a brief and argument on behalf of the opposition. We have examined with much interest the authorities cited by the trial judge in his "legal conclusions," as well as certain additional authorities cited by counsel for respondents. The facts in the cases cited are so different from those in the case before us that there is no analogy, and they do not furnish us with any asistance in determining what we should hold under the facts of this case.

[2, 3]  The cases do, however, announce certain well-established propositions concerning which there can be no dispute—propositions in perfect harmony with what we said in our former opinion in this case. The main question in all cases of this nature is the intent of the party who has ceased to occupy the homestead. No general rule can be laid down as a guide for a court in determining intent, but each case must stand upon its own facts. Actual removal without intention to return is a forfeiture of the homestead right. If one removes from homestead property without any present intention of returning, but with a mere possible, or at the most probable, future purpose to do so, contingent upon the happening or not happening of a particular event, the homestead is abandoned. Long absence, while not conclusive proof of intent to abandon, is a circumstance which may indicate such an intent in absence of a showing of intent to return. The real question is: Did the party have a fixed and actual purpose

or intent to return and reside on the property, and did that purpose or intent continue to exist to the time in question?

The trial court made the following "findings" in addition to those made in the former trial:

"That the home or abode of the plaintiff and her husband is still at Greenwood, in this county, where he still continues as 'barnman' in the government service, and he has no present intention of leaving that employment and moving to Geddes onto the property here involved; that he has lived some eight years at Greenwood, never lived at Geddes, nor did he ever have any acquaintance or business there.

"That it is now more than four years since plaintiff left the property involved, claimed as a homestead; that when she left it she rented it, and her personal property that was stored in one of the rooms has since been removed, except three articles of very slight value, which are still on the premises for her accommodation; that since her leaving and renting the place she has never had any fixed or definite purpose or intention of returning and occupying it as a home, nor has her husband had any such intent or purpose since their marriage.

"That at the time of the levying of the execution involved she had abandoned the said lot 8 as a homestead, and, as found, the present husband had never lived upon it or had any certain intent of doing so."

[4-6]   It must be borne in mind at all times that what the trial court was called upon to determine was whether this land had lost its homestead character when it was levied on in January, 1917; the intention of either plaintiff or her husband in September, 1920, the time the case was tried and the additional findings made, is absolutely immaterial. It must also be borne in mind that while, at the time of this second trial, more than four years had elapsed since plaintiff left this property and rented same, only a little over two years elapsed up to the time this land was levied upon. The absence of plaintiff from this land since it was levied on furnishes no evidence of intent to abandon the homestead right; during this period she has been maintaining in court that it was her homestead, and even if she could have and had acquired actual possession after such levy, it would be no evidence of her former intent. But, of course, all of the other

facts found by the court are immaterial if the evidence sustains the finding that, "since her leaving and renting the place, she has never had any fixed or definite purpose or intention of returning and occupying it as a home;" if she had no intent to return when she left the place, she forfeited her homestead right and could only regain it by repossession. While a party leaving a homestead must, in good faith, intend to return to it at some future date, such date need not be "fixed or definite" as to time; neither need such intent be an intent to return regardless of all possible contingencies; but, if there is an honest belief that at some time in the future the party will reoccupy the property as a home, and such party does no act inconsistent with such belief and intent, the homestead right is not forfeited. It is undisputed that this property was plaintiff's homestead up to the time she left it. She rented it, reserving one room in which she left all of her furniture. Her testimony as to the purpose and intent of her going is undisputed unless it be rendered doubtful by the mere fact that she rented the house. She left and went to another town to and did live with her daughter. She testified:

"My health was poor, so I rented my house and went down there to live with my daughter for a visit so she could take care of me."

Certainly what she then did did not evidence any intent to abandon the homestead, and she testified that she always intended to return to it as her home. If one cannot leave his home for a temporary purpose, then our homestead laws make of the home a veritable prison, and certainly it is not public policy to require one to leave his dwelling house vacant in order not to forfeit his homestead right. To illustrate: A member of this court might, at the time of his election as judge, have had a homestead for many years in some city other than Pierre. He rents this home and moves to Pierre, where he never acquires another homestead. He continues to own this property for 10 years. Let us suppose that when he left this property, he intended to return to it whenever he ceased to be a member of this court, but had no more definite or fixed intention as to the date when he expected to return. Would this vacating his property for such a purpose and with such an intent result in the immediate forfeiture of his

homestead rights therein?  The answer is too obvious for argument.

The trial court found that:

"At the time of the levying of the execution * * * she had abandoned the said lot * * * as a homestead."

[7]   Inasmuch as she had not abandoned it when she first left it, if she ever did abandon it prior to the levying of the execution, it must have been either when she entered the government employ or when she married her present husband.  In our former opinion we propounded the query as to each of these dates as to why it should be held that there was an abandonment on such date.  Certainly the entry into the government employ did not, in and of itself, work an abandonment of the homestead, any more than leaving one's homestead to fill a public office would do so.  Did such act evidence any intention never to return to the homestead?  Certainly not, and moreover plaintiff testified that she always intended to return when her employment at the agency ceased.

[8, 9]   Did plaintiff's remarriage forfeit her homestead right?  Of course, if her husband had owned a home and they had elected to occupy that as their home rather than the one owned by her, then she would have abandoned her homestead right in the property in suit.  But he owned no home.  The government furnished them a place in which to live, to which place she brought the larger part of her furniture, which she had previously stored in her homestead.  As announced in our former opinion, defendants seemed "to concede that such remarriage did not in and of itself, as a matter of law, work such forfeiture," and we said:  "That respondents are right in such concession is beyond question. * * *"  This declaration became the law of this case.  If, at the time of such marriage, the home had not been held under lease, and plaintiff and her husband had taken immediate possession of it, or if she had then been in possession of it, that it would have continued to be the homestead of this family is beyond dispute.  If, under those circumstances, on the next day after their marriage the husband had been offered and had accepted the position he has since held, and he and his wife had moved to the government home intending to return when his employment ceased, would such removal be a forfeiture of their

homestead, or would their then remaining away for some four or five months, the time elapsing before the levy, evidence any change of intention? 'Again we say the answer is too clear for argument.

[10] Upon the first trial plaintiff, on cross-examination, stated that she never tried to sell this property; that her renter's wife asked her if she wanted to sell; that she said "No;" that this party wanted to know how much she would take for it; and that she said she did not think she would sell it. On the second trial this woman was called and testified as to this conversation. She fixed the time as about a year after her husband first rented the place. He was the second renter. This would fix the date at about the time of the levy. She testified that plaintiff asked "if we would consider buying the property," and that plaintiff named some price for it. Defendants seem to deem this conversation material as showing an intent to abandon the homestead as such. Conceding the conversation was as stated by this witness, of what evidentiary force is it? The owner of a homestead does not, by resorting to every known means to sell such homestead, forfeit his homestead right therein.

To our minds the overwhelming evidence as to "intent" is against the findings of the trial judge.

The judgment and order appealed from are reversed.