PIRRUNG, Appellant, v. BLANKENBURG, Respondent.

(230 N. W. 219.)

(File No. 5594. Opinion filed Apr. 11, 1930.)

M. J. Russell, of Watertown, for Appellant.
Loucks, Hasche & Foley, of Watertown, for Respondent.

BROWN, P. J. On April 7, 1920, plaintiff, who owned a tract of land in Codington county containing from 70 to 80 acres, entered into a contract to sell it to defendant for $80 an acre, the purchase price being named as $6,400, based on 80 acres; but the contract contained a provision that the total price was to be adjusted at final settlement on November 1, 1920, "according to the record acreage on file in the office of the county auditor and register of deeds of said county." Defendant paid on the contract $1,000 at the time of the execution of the contract and was to pay $1,400, "more or less," on November 1, 1920, and the balance of $4,000 to be paid on November 1, 1925, secured by a mortgage on the premises. Defendant went into possession, and on November 1st paid the interest due at that date, but nothing on the principal. Defendant claims that he made numerous requests of plaintiff to have the land surveyed to ascertain the acreage, but nothing was ever done by plaintiff to ascertain the shortage; that defendant finally made some sort of measurement himself and found it measured only 69 or 70 acres. He therefore got a draft for $600, which was the amount he claimed would be due November 1st on the basis of the tract containing 70 acres, and deposited this draft in a bank which was authorized to receive and transmit to plaintiff, residing in Illinois, the amount of the payment due November 1st.

Although an officer of the bank testifies to having received this draft and that "it was held in trust by the bank," the evidence in the record does not show when it was received nor what became of it. The court finds that it "remained in the hands of the bank for more than one year and was finally refused by plaintiff, but without plaintiff advising defendant of what the record acreage of the land was," and that the draft was returned to defendant about January 6, 1922. On that date plaintiff served on defendant a notice demanding payment to him of $385, balance of interest due on the contract, also $1,400 which he claimed was due November 1st, and unpaid taxes in the sum of $202.73, making a total of $1,987.73, and further notified defendant that unless this sum was paid to plaintiff's order at Henry State Bank on or before March 15, 1922, plaintiff would "cancel and determine this said contract." This sum not being paid, plaintiff on April 3, 1922, commenced this action to determine all adverse claims of defendant to the property, and demanding that it be adjudged that defendant has no estate or interest whatever in and to the premises and has forfeited all his right, title, and interest in and to said premises. Defendant answered, setting up the contract and alleging by way of counterclaim in substance that it had been mutually rescinded and abandoned; that he had surrendered possession to plaintiff and demanded return of what he had paid on the contract. The trial court found in substance that plaintiff, by the notice of forfeiture and cancellation served upon defendant, plaintiff not having tendered any deed or abstract pursuant to the contract or ascertained the record acreage of the land, and having demanded more than was due him under the contract, had rescinded the contract and given defendant the right to treat it as abandoned, which defendant did, and he was therefore entitled to recover the money paid by him, less the reasonable value of the use and occupation of the premises, and from a judgment entered in accordance with the decision and from an order denying a new trial plaintiff appeals.

By the terms of the contract defendant acquired a vested equitable estate in the land, of which he could not be deprived except by decree of court or mutual consent of the parties, or in pursuance of strict compliance with the terms of the contract on the part of the vendor. Phillis v. Gross, 32 S. D. 438, 143 N. W. 373; Reid v. Gorman, 37 S. D. 314, 158 N. W. 780.

The contract price was $80 an acre, and the total of $6,400 was arrived at on an assumption of 80 acres being in the tract, but the contract itself expressly stated that there was only between 70 and 80 acres and that the payment of $1,400 provided for on November 1, 1920, was to be reduced by the amount of the shortage in area from 80 acres at the rate of $80 an acre. The vendor took no steps whatever, either by actual survey, looking up the records referred to in the contract, or by furnishing an abstract of such records, to ascertain what that shortage was, but on this appeal he concedes that it was 4.58 acres. Nevertheless in his notice of forfeiture he demanded payment on the basis of the full 80 acres, and according to his own concession he was demanding at least $366 more than was due him, and in his notice he declared that unless that excessive amount was paid he would cancel the contract. He further claimed in his notice that defendant must pay him the amount of the unpaid taxes. There is no evidence that he had paid the taxes, and therefore he was not entitled to demand the amount of the unpaid taxes from defendant; although defendant had agreed to pay the taxes, he was not liable for the amount thereof to plaintiff. Defendant claimed that his measurement showed only between 69 and 70 acres of land in the tract. This measurement was not made by a surveyor nor by the use of surveying instruments and probably was defective, but plaintiff never took any steps at all to ascertain the amount that was actually coming to him under the contract, or to advise defendant of the acreage he claimed was in the tract, nor did he at any time tender a deed or abstract of title as he was required to do by the terms of the contract. The contract provided that in case of failure by defendant to make the payments provided for, then the whole of the payments, both principal and interest, should, at the election of plaintiff, become immediately due and payable, and that the contract at the option of plaintiff might be forfeited and determined by giving to defendant notice in writing of his intentions to cancel the contract, and that if so canceled defendant should forfeit all payments made by him.

Plaintiff's right to the payment due November 1st, and defendant's right to receive a warranty deed to the land with an abstract showing a merchantable title, were mutually dependent covenants, and plaintiff could not put defendant in default or

lawfully forfeit defendant's right under the contract until he had tendered such a deed and abstract. Ink v. Rohrig, 23 S. D. 548, 122 N. W. 594; Hauert v. Kaufman, 45 S. D. 132, 186 N. W. 555; Id., 50 S. D. 203, 208 N. W. 981; Ontjes v. Thomas, 45 S. D. 425, 187 N. W. 726; Saunders v. Erickson, 45 S. D. 500, 189 N. W. 116; Hoffman v. Kleinjan (S. D.) 224 N. W. 187.

In Hauert v. Kaufman, supra, the situation was quite similar to that in the present case. Plaintiff brought action to quiet title against defendant, a vendee under a land contract like that in the case at bar. Defendant in his answer set up a counterclaim, setting forth facts showing that plaintiff wrongfully attempted to cancel and forfeit the contract and demanding judgment for the money that defendant had paid under the contract. We held that plaintiff having wrongfully sought to terminate the contract, "appellant had the right to elect to treat the same as mutually abandoned, and to recover the $1,000.00" that he had paid.

■■ Plaintiff contends there was more due him on November 1, 1920, than $600, and that as defendant had only offered to pay that much, it would have been an idle act for him to tender a deed and abstract, but it clearly would equally have been an idle act for defendant to have tendered any sum less than $1,400, which plaintiff now concedes was $366 more than was due him, to say nothing of plaintiff's demand for taxes in the sum of $202.73 to which he was not entitled. It thus appears that the parties had arrived at a stage where any further move by either of them under the contract would have been an idle act. Plaintiff unjustifiably declared the contract canceled and determined. Defendant promptly surrendered possession and demanded the return of what he had paid. Plaintiff now comes into a court of equity asking to have the cloud on his title created by the contract removed, but he confesses that his termination of the contract was founded upon defendant's failure to comply with his own unjustifiable demand for more than $500 in excess of what was due him. He who seeks equity must do equity. Rev. Code 1919, § 48. Plaintiff cannot insist upon a forfeiture provided by a contract which he himself has unjustifiably terminated. In this action he is only entitled to have the cloud of the contract removed from the land upon a proper adjustment of the equities between himself and defendant, that is, upon the return of the money he received on the contract,

less the value of the use and occupation of the land during the time it was occupied by defendant, and this the judgment of the trial court gave to him.

The judgment and order appealed from are affirmed.

POLLEY and SHERWOOD, JJ., concur.

CAMPBELL, J. I concur in the affirmance of the order and judgment appealed from.

BURCH, J. (dissenting). I regret that I am unable to agree with my associates. It seems to me the principles involved in this case are of such vital importance to real estate transactions in this state that the issues ought to be squarely met and decided. I think this action was maintained on the theory of the holding in Hauert v. Kaufman, 45 S. D. 132, 186 N. W. 555, to the effect that if one give notice of cancellation of a contract for failure to make payments as agreed, under a provision of the contract that a cancellation may be declared for such cause, without first tendering a deed so as to put the purchaser in default, he thereby repudiates the contract and the purchaser may recover back all payments made by him and rescind the contract. This case seems to me to be so contrary to equity and so out of harmony with the law of contracts that it ought to be at the earliest opportunity overruled. I think the facts of this case are such that we are in duty bound to either affirm the Hauert v. Kaufman case by deciding this on the authority of that case, or by overruling that case and reversing the judgment here. There is no room to evade the issue. I cannot agree that the facts are as stated in the majority opinion. The majority say: "Defendant claims that he made numerous requests of plaintiff to have the land surveyed to ascertain the acreage, but nothing was ever done by plaintiff to ascertain the shortage; that defendant finally made some sort of measurement himself and found it measured only 69 or 70 acres. He therefore got a draft for $600, which was the amount he claimed would be due November 1st on the basis of the tract containing 70 acres, and deposited this draft in a bank which was authorized to receive and transmit to plaintiff, residing in Illinois, the amount of the payment due November 1st."

The facts as I gather them are these: The contract provided for a payment of $6,400 on the basis of $80 per acre, with this pro-

viso, "however at the final settlement, this is to be adjusted more or less according to the *record* acreage." No possible construction of that proviso can justify a demand for a survey, nor justify a measurement. The record showed the acreage. There is no real contention that it did not. The amount due November 1, 1920, was a simple matter of calculation from the record, more readily accessible to respondent than to appellant. It is plain the talk of survey and measurements was a stall, because respondent did not have the money to make his November 1st payment. He does not claim to have had. He paid only $183.16 in the fall of 1920, and not that until November 12th. It was not until January 6, 1922, that appellant gave notice of cancellation. The notice of cancellation was according to the terms of the agreement, except that it gave more than 60 days' notice in which to pay the balance due or forfeit payments made instead of 30 days as provided by contract. On being asked what he did after notice was served, respondent said: "Well, I had $600.00 up there in the bank and was wondering why they did not accept it." As to this $600 he said appellant's sister "was up there and said $600 that Fall, would carry me on the rest." This testimony of respondent himself ought not to be construed (though it seems to be so construed by the majority opinion) as a tender of $600 in full of the November 1, 1920, payment entitling him to a deed and as a demand for a deed. It was a mere offer to pay $600 and to let the rest run for a while. If this was agreed to in the fall of 1920, appellant did let it run for more than a year and respondent did nothing. It takes a vivid imagination to construe respondent's actions as a good-faith *tender* of the amount claimed to be due and a demand for a deed. If he was going to make a good-faith tender, he was bound to ascertain the amount due under the contract. That was a matter of easy computation, and the correct amount was much more than $600. Surely respondent can gain nothing by such a pretended tender, never thought of by anyone until the trial of this case. The only fair treatment of this case is on the theory it is presented, namely, that neither party was in default, because neither had made a tender which would put the other in default. That because of that the giving of the notice of cancellation and forfeiture was not binding, and under the case of Hauert v. Kaufman respondent can recover his money back. If this court is going to stand by that

decision, the result reached is correct, although reached by a misapprehension of the facts. If it is not, then the result is wrong, The result reached in this case illustrates the evils of the rule announced in Hauert v. Kaufman. Pirrung sold his land, 75.42 acres, for $80 an acre, received $1,000 down payment, and never reecived any more except $183.16, and now must lose his land because he contracted that he might take his land back if the purchaser did not care to make further payments and under the terms of the contract thereafter made an offer to cancel the contract if defendant did not care to pay out. The loss occasioned by a violent reaction in the price of land just after the sale ought to fall on the purchaser. But under the decision Pirrung must bear all of that loss, allow Blankenburg to occupy and use the land, let it grow noxious weeds, and then defeat a substantial recovery for the use because, being weedy, it was not worth much to use.

Defendant is given a lien for what he has paid and will get the land thereunder, because in present depreciated values that is all it is worth, subject to the accumulated taxes the purchaser has refused to pay. Perhaps, I feel the injustice of this more, because I have had experience as a real estate broker and know the temptation to speculate in other people's property on thin margins, and now to give to the broker a recovery of his thin margin after inducing the seller to let him out of the purchase in the good-faith belief he can keep the margin, which is wholly inadequate as damages, does not seem just. In this case judgment was rendered in favor of the purchaser for $1,010.68, and he was awarded execution not only against the land but a general execution against any property of the seller. A bandit can get only what he may seize. The law, if this be the law, is more efficient. It can rob one of both present and future acquisitions.

This action is one to determine adverse claims. Section 2848, Rev. Code 1919, provides: "The defendant in his answer must set forth fully and particularly the origin, nature and extent of his claim to the property; and may set forth his rights in the property as a counterclaim and demand affirmative relief." The purpose of the action is to settle by a decree the rights of claimants to the property. Defendant's answer does not set up an adverse claim to the land. Under the *provisions of the contract*, plaintiff could give notice of its termination, and declare a forfeiture of all money paid

by defendant, if defendant defaulted in performance of the covenants on his part. This was attempted, and defendant says he treated the contract as rescinded and abandoned. If he did, he accepted plaintiff's exercise of his option to forfeit it, under the *terms* of the contract. If he did not wish to assent to the abandonment, he should have claimed under the contract, not a return of his payments, but a deed. To state the situation briefly, if defendant wants to be relieved of the forfeiture, he may plead cause therefor, offer to perform, and ask affirmative relief requiring a conveyance to him; but he cannot abandon the contract, and because plaintiff asks to have his title cleared from the cloud of the abandoned contract, recover payments made thereunder. He must either claim under the contract or abandon it. Having elected to abandon it, his rights are at an end.

The first decision of this court in the case of Hauert v. Kaufman et al., supra, I think was plainly wrong. The case was twice before this court on appeal. While I cannot approve the reasoning in the later decision reported in 50 S. D. 203, 208 N. W. 981, the result therein announced was right, not for the reasons assigned, but because of the decision on the earlier appeal (opinion reported in 45 S. D. 132, 186 N. W. 555), which became the law of that case on the second appeal. As a precedent, however, I am not willing to adhere to the rule announced in Hauert v. Kaufman et al., 45 S. D. 132, 186 N. W. 555, 556, because I do not consider it sound. In that case this court considered the covenants of the vendor and vendee in their relation to each other as dependent or indepedent and concluded that the covenant to convey and the covenant to pay were dependent and that neither party to the contract could put the other in default without tendering performance on his part. This court said: "If they were dependent, then * * * respondent had no power to declare appellant's rights * * * forfeited." So far I approve. But here the court fell into error by treating a declaration of forfeiture as a rescission or abandonment of the contract. This probably occurred because of the form of the action and a failure to distinguish between an action to quiet title and one to enforce a forfeiture provision of a contract. On first thought it may seem that one who declares a forfeiture and then sues to quiet title is seeking to sustain the forfeiture. But that is not the case. The object is to remove the cloud of the contract.

If the contract is, in fact, more than a cloud on the title, and defendant has a beneficial interest in it, the defendant's interest will be declared and established. The state of the title is the subject of the suit. The right to declare a forfeiture was one of the stipulations of the contract, and the tender of a declaration of forfeiture was as much a tender of performance as would have been the tender of a deed. If accepted, the contract would have been terminated and at an end. Taylor v. Martin, 51 S. D. 536, 215 N. W. 695. The parties surely had a right to so contract, and it is not for this court to say that such a covenant may not be of mutual advantage to both. If the land had depreciated in value so that the amount forfeited was less than the loss in value, or if the purchaser was unable to pay the balance, due on the contract, then the forfeiture benefited the purchaser, although the vendor may, by waiving further payments of doubtful value to him, gain by a prompt termination of the contract. On the other hand, if the vendor had no right to forfeit, then the contract has not been terminated, and defendant may assert his rights thereunder. A declaration of forfeiture is in no sense a rescission or a refusal to be bound by, or a repudiation of, the contract. Because one asserts a right under a contract that he is not entitled to does not destroy the contract, nor prevent his asserting the rights to which he is entitled.

The only authority cited in the Hauert Case to support the conclusion that an erroneous declaration of a forfeiture constituted a breach of the contract entitling the purchaser to a refund of payments made was Cleary v. Folger, 84 Cal. 316, 24 P. 280, 281, 18 Am. St. Rep. 187. In that case the California Court was construing a contract containing this clause: "In the event of a failure to comply with the terms hereof by the said party of the second part [the purchaser], the said party of the first part shall be released from all obligations, in law or equity, to convey said property, and said party of the second part shall forfeit all right thereto." This clause does not provide for a forfeiture of the money paid, but only a forfeiture of the right to a deed. That court held time the essence of the contract and that the failure to make the payments required *terminated the contract*. Exactly the reverse of the situation that obtains in this and the Hauert Case, where the contract is not terminated. The California court was deciding the right to

enforce a forfeiture. That court said: "Forfeitures, as such, are not favored by the courts, and are never enforced if they are couched in ambiguous terms." But that court was particular to point out that the vendor might recoup any damages he suffered by the delay.

In the case at bar no such situation arises. This court held in Ink v. Rohrig, 23 S. D. 548, 122 N. W. 594, that the covenants of the vendor to convey and of the vendee to pay are dependent and neither can be placed in default until the other tenders performance. If the vendor does not tender a deed and demand payment when due, he waives the time of payment. Speer v. Phillips, 24 S. D. 257, 123 N. W. 722; Burchfield v. Hageman, 35 S. D. 147, 151 N. W. 47. Under such circumstances there can be no forfeiture as such, abhorrent to a court of equity. A notice of forfeiture under a contract giving the vendor the option to either insist upon the performance of the contract, or if payments are not made as per contract to waive further payments, cancel the contract, and retain payments already made, amounts to no more than an offer on the part of the vendor to release the purchaser from further obligation under the contract if he will surrender payments. If this offer is accepted (and in this case defendant admits his acceptance), he ought to be bound by the new contract he has thus made. If he does not accept, he has the option to perform on his part and compel specific performance by the vendor. So long as such right is not lost there is no occasion for a court of equity to relieve from a forfeiture. The purchaser may relieve himself by performing and compelling performance by the vendor.

I feel that a grave injustice has been done by the decision in this case, but being unable to prevent it, I content myself with this expression of my views.