CARR ET AL. *v.* TROUTMAN ET AL.

[No. 18,488.   Filed December 29, 1954.]

152

*Frank S. Efron, Owen W. Crumpacker, Edmund A. Schroer* and *Crumpacker & Schroer,* all of Hammond, for appellants.

*Frederick E. Rakestraw,* of Akron, for appellees.

BOWEN, J.—This is an appeal in an action to quiet the title to real estate and for possession of the same. The appellees' amended complaint alleged that a real estate option contract was executed by the appellees and given to the appellants providing for the purchase of certain real estate, and alleged that appellants had failed to comply with the provisions of said contract in that they had failed to keep the premises in repair as provided in said contract, and that the appellants had failed to make certain payments in accordance with such contract. The prayer of the complaint asked for possession of the real estate and that appellees' title to such real estate be quieted against the appellants.

Issues were joined upon the appellants' answer in seven paragraphs and a cross-bill in equity asking for relief against the attempted forfeiture. In appellants' pleadings were contained three affirmative defenses, including fraud, the statute of fraud, and waiver of the forfeiture provision by conduct of appellees in accepting late payments. Upon the issues so joined the trial court entered findings of fact, conclusions of law and decree

against the appellants, and rendered judgment upon the findings of fact and conclusions of law against the appellants.

The appellants filed a motion for a new trial, which was overruled, and this appeal followed.

The assignment of errors by the appellants are that the trial court erred in overruling appellants' motion for a new trial, and that the trial court erred in its conclusions of law numbered 1, 2, 3, 4 and 5. Grounds of the motion for a new trial are that the decision of the court is not sustained by sufficient evidence and is contrary to law, that the findings of fact entered by the court are not sustained by sufficient evidence, and that the findings of fact are contrary to law.

From an examination of the entire record the following facts appear:

That on and for some time prior to October 28, 1943, the appellee, David E. Troutman, was the owner of the real estate in question. That on October 28, 1943, the appellees, David E. Troutman and Maude E. Troutman, executed a real estate option contract providing for sale of such real estate to William A. Carr and Mary Carr, the appellants herein. The down payment called for in such contract of $325.00 was paid and a balance of $4175 was agreed to be paid by the appellants, William A. Carr and Mary Carr, in monthly payments of $25.00 per month to be made on the 28th day of each month. Under the terms of this agreement the appellants were to keep said premises in repair, pay the taxes on such real estate, and keep said premises insured, in addition to the monthly payments. Upon the payment of the down payment on October 28, 1943, the appellants took possession of the real estate pursuant to the contract. At the time they took such possession there was no furnace in such dwelling house and some

of the plumbing was not in working order. The appellants installed a furnace and made such other improvements to the plumbing as to make the house tenantable. From such date of October 28, 1943, until November 28, 1951, the appellants made payments of $25.00 per month. In addition, the record shows that the appellants paid the taxes and kept the property insured. The evidence further shows that the appellee, David E. Troutman, by his own admissions, had accepted past due payments of contract installment payments during the period in question.

The grounds set forth for the alleged forfeiture in appellees' complaint were failure to comply with the terms of the contract in making payments, and failure to keep such property in repair. However, it is significant that appellee David E. Troutman in his testimony stated as follows: "It's my position that I cancelled because the house wasn't in good repair. It was not for non-payment of payments, primarily on account of repairs." The appellee, David E. Troutman, also testified that "the only time I stopped by in 1951 was in July. I think the only time I stopped in 1951 was in July. It is possible that when I wrote to Barker in January, 1952, I hadn't seen the property since July of 1951."

The appellants failed to make the payment due on the contract on December 28, 1951, and on January 28, 1952, the day the next payment fell due, the appellee, David E. Troutman, wrote to the appellants in substance as follows:

"I have not heard from you in reply to my card. By the terms of our contract same is now void. The contract says that any amount you have paid will be considered as rental—that is all cash and improvements you have put in the place. I understand there has not been any insurance for some time. This also is a violation of contract. Also

there are improvements which should be made. At the time you took possession I was offered $50.00 per month as rental. All the cash and improvements you made will not amount to this much, so you will still have had your rent cheap. I have a buyer for the place and will probably make the change at once. I will be in Hammond this afternoon, but as my time will be very limited I will not be able to see you."

There was no evidence of the contents of any cards or letters written with reference to the cancellation of this contract prior to this letter of cancellation. The evidence shows that there were some repairs that were needed on such property at the time this letter of cancellation was written by appellee Troutman. However, the record does not show any notice to the appellants with reference to the past due payments or to the making of repairs and fixing a reasonable time within which to make the same.

In support of appellants' answers and their cross-bill in equity the following undisputed evidence stands in the record:

After the appellants had defaulted the first time in eight years, appellee David E. Troutman, on January 22, 1952, wrote to a neighbor of the appellants, Vaughn Barker, informing him that the appellants were in default and stating: "I hope they do not try to sell their contract to some one else as it would not be legal. Unless I can hear from them I will have to cancel their contract and will sell to some one else. In that event I shall come to Hammond and try to find someone who would suit you folks. I always try to be very easy on folks if they are in trouble, but when they don't even answer my letters I will have no choice. *Please do not say anything to them about it.*" (Our emphasis.) He later wrote another letter to Vaughn Barker in which he discussed selling the property to him and

stated: "The way I get it as soon as you get the deed recorded you can give Carr notice to move out and ask for damages as I will date deed back to his first missed payment. Then his lawyer will likely start a separate suit against me to have Carr's contract reinstated. This suit would have to be filed here—in my county—and it would have nothing to do with your possession suit." On January 28, 1952, he wrote the neighbor, Vaughn Barker, in which he stated: "I will ask $6000 for the place on contract. Probably $500 down and $50 per month. If I get Carr out and you folks want it you can have it for $4200 with no down payment and $25.00 per month—with privilege of paying more any month."

On February 13th, in a letter to the Barkers, he suggested, "I will write a temporary contract which you may show Carrs." On February 14th, in a letter from Troutman to Barker he mailed him a proposed option contract with the amount of consideration marked by crosses and a note at the bottom, "the amount has been privately agreed upon" and a statement, "I scratched out amount so you need not tell them. Later I can send you regular contract. There is nothing for you to sign."

On February 19th Troutman wrote to the Barkers about the property, and on February 21st he wrote to them and stated, in addition to other things: "I thought it might impress them to tell them I had the same fight with the big Gary Building and Loan Association on that same house. They let their payments slip for some time and I cancelled the contract. They had access to the best attorneys in Lake County but they seemed happy to give it up. And it didn't cost me anything. So maybe you could advise Carrs that they will go into a losing proposition to let the law settle this. Not only

that but it will be recorded and make it hard for them to ever make another similar deal."

On February 25th, 1952, Troutman wrote to Vaughn Barker again: "I have not heard from Carr yet. I hope he will make an agreeable settlement with you without me taking it by law. I was thinking it might give you more power if I gave you a deed for the place. You would not have it recorded and it would be just as legal not recorded. Then after we got Carr fixed up you could return the deed to me and we would go on the contract. If you could show him an actual deed for the place it might be a good thing. If he makes me wait much longer I will have to cause him a lot of trouble and expense."

The appellee also advised the Barkers to contact Troutman's lawyer in the following communication: "Just completed bond for $2,000 and signed up some more papers. Attorney will be in Hammond Monday. Says he will try to start in good time as he wants to see the sheriff, the fire department, possibly Mrs. Carr, and her attorney. He wants to see you if he possibly can as he wants you to point out how much Carrs have let the place depreciate. Don't fail to show how bad it is. I know it is plenty bad without mis-representing it. I hope we can get possession soon."

The appellants through their attorney, in a letter dated February 4th, tendered a check for $50.00 for the two payments in default, which the appellee refused to accept on the ground the house was not in good repair. After the commencement of suit the appellants paid the money for the delinquent payments into the clerk's office.

The provision of the contract in question with reference to forfeiture reads as follows:

"If said vendee shall fail to make payments as above, then all payments and improvements made hereunder shall be forfeited as rental for said premises and the said vendee shall give and surrender to the said vendor the peaceful possession of said premises, together with all improvements made thereon by said vendee."

By reason of the specification of errors one of the questions we are called upon to determine is whether the judgment of the court validating the forfeiture of this contract was proper under the circumstances shown by the record. In addition, we must examine the findings and conclusions of law to determine whether or not the court erred in its decision with reference to appellants' cross-bill in equity.

The law appears to be well settled that after waiver by the acceptance of overdue payments of a contract for the sale of real estate, before the vendor can declare a forfeiture of such contract, he is duty bound to give the purchaser reasonable time and opportunity to comply with the contract, and this requires the giving of a definite and specific notice of his intention to insist upon the forfeiture if the amount then due is not paid within a reasonable time. *Baker* v. *Eades* (1930), 90 Ind. App. 664, 169 N. E. 686; *Clayton* v. *Fletcher Savings & Trust Co.* (1929), 89 Ind. App. 431, 155 N. E. 539, 107 A. L. R. 400, and cases therein cited. There is nothing within the record of the instant case to show that the appellees—vendors gave such a notice with reference to the delinquent payments prior to the time they attempted to declare a forfeiture of this contract. The record does not show that there was any specific direction given to the appellants of an intention to declare the contract forfeited by reason of the failure to make repairs, coupled with a reasonable time within which to make the same. On

the other hand, the intent of the vendor to secure this property and make sale of it to a neighbor of the appellants, without giving a reasonable time within which to make the payments on the contract and such repairs as they might deem necessary, is clearly evident. The written words of appellee Troutman establishing his intent to cancel this contract without any reasonable opportunity for appellants to make the delinquent payment or the needed repairs claimed, stand out in bold relief in the record in this case. These words speak for themselves and establish a sinister intent and design for material gain on his part which, when it does exist, is too rarely discovered and made evident in the records of court proceedings. The appellants filed a cross-bill in equity. In equity and good conscience, since forfeitures are not favored in the law and jurisdiction is retained and exercised by equity for relief against the consequences of a forfeiture, where, as here, such for-. feitures will not grant to the purchaser any undue advantage, because of the circumstances shown by the record in this case, the lower court erred in rendering a judgment upholding a forfeiture.

The record in this case discloses that the appellants, when they went into possession of this property, made such property habitable by putting in a furnace, plumbing and other improvements, paid the taxes, kept the property insured, and occupied it as their home for over eight years, having paid ninety-six monthly contract installments. The unjust enrichment to the appellees as shown by the affidavit for possession would amount to approximately $3300.00. In addition, the court, in finding numbered 12, set forth that the appellants abandoned the contract, which would serve as a basis for the court's decision if such finding was supported by any evidence. However, the only reason-

able conclusion to be drawn from the evidence is that there was no abandonment of this contract by the appellants. The court therefore erred in overruling appellants' motion for a new trial. *Central Pharmacal Co.* v. *Salb* (1939), 106 Ind. App. 495, 13 N. E. 2d 875.

This judgment is reversed with instructions to the trial court to sustain appellants' motion for a new trial, and for further proceedings not inconsistent herewith.

Royse, P. J., and Crumpacker, J., not participating.

NOTE.—Reported in 123 N. E. 2d 243.