FORD et ux., Appellants v. HOFER et al., Respondents
(111 N.W.2d 214)
(File No. 9854. Opinion filed October 19, 1961)

W. M. Potts, Mobridge, for Plaintiffs and Appellants.

Homeyer & Robbins, Selby, for Jacob G. Hofer, and Pauline Hofer, Defendants and Respondents.

Erwin L. Wiest, Herreid, for Arthur Quenzer. Gottlieb Schaffer, Edwin Beck, and Albert G. Beck, Defendants and Respondents.

BIEGELMEIER, J. On October 1, 1954, defendants Jacob G. Hofer and his wife, vendors, entered into a written contract for deed with plaintiffs, Orville F. Ford and Ida C. Ford, his wife, vendees, for 560 acres of Campbell County land. The purchase price was $11,200 of which $1,200 was the down payment and the balance of $10,000 principal was to be paid $500 on October 1, 1955, and a like sum on each October 1st thereafter for twenty years with interest. The contract was on a printed form containing terms similar to those in Speer v. Phillips, 24 S.D. 257, 123 N.W. 722. The Fords who were tenants on the land continued to occupy and farm it until the fall of 1957, when they moved to a nearby town so the children, as Mrs. Ford explained, could go to school there; she further testified that it was their intention to go back and farm the land in the spring of 1958. Mr. Ford accepted employment in a garage there in the fall of 1957. The dates and amounts of some of the payments are in dispute; it is undisputed that when on October 1, 1955, payments of $500 of the principal and $400 interest were due, Ford paid $100 in cash and gave a note and chattel mortgage to Mr. Hofer for the balance of $800; two payments of $100, one of $75 and another of

$300 were made by the fall of 1956 and in July 1957 a further payment of $531.26. Hofer testified that he applied this $1,206.26 all on the interest, which paid all of the interest in arrears and in advance to October 1, 1957; that fall he told Ford that he expected one payment on the principal and "the taxes and the insurance had to be paid up"; and "they (these payments) could have been made anytime". After this conversation Mr. Ford paid Hofer $200 evidenced by a check of Ford's father cashed October 28, 1957. No time was set for payment of the $300 balance of this one principal. On December 21, 1957, Ford had a farm auction sale of most of his personal property. Hofers had consulted a lawyer and on December 11, 1957, executed a Declaration of Forfeiture addressed to Orville F. Ford and Ida C. Ford, which stated the land contract "is hereby declared forfeited by reason of default in the payments therein * * * that the undersigned are the sole owners of the title to said lands * * *" which they recorded in the Register of Deeds office on December 18, 1957. No copy of this Declaration of Forfeiture or notice of its recording was ever served on either of the Fords. On December 16, Hofer released the chattel mortgage of record and on the 27th gave Mr. Ford a check for $200 marked Refund on land payment.

Between March 10 and 19, 1958, Hofer made efforts to sell the land to others and later in March 1958 he sold it in separate tracts to four different buyers for $15,270.

On August 28, 1958, plaintiffs commenced this action naming Hofers and the purchasers as defendants. Plaintiff's pleadings prayed the court determine the amount due on the contract and other equitable relief. The answer of the Hofers was a general denial and a defense denominated a cross claim. An amended answer of the other defendants was a general denial with the further allegation that they purchased the property in good faith without notice of any claims of the plaintiffs therein.

The trial court's findings follow the facts above set out, were generally favorable to the defendants. A judg-

ment quieting title in Hofers subject to the rights of the later purchasers and dismissing the plaintiffs' complaint followed.

Whether the Fords as vendees abandoned the contract for deed with the Hofers as vendors is decisive of the appeal.

Defendants contend that plaintiffs by accepting the note and cancellation of chattel mortgage and by accepting repayment of $200, plaintiffs knew that the contract had been cancelled, abandoned their rights under the contract and are estopped from asserting any rights in the property. As the elements of estoppel are not present, Lambert v. Bradley, 73 S.D. 316, 42 N.W.2d 606, the claim of abandonment remains to be considered.

■ The acts of the parties to a written contract for deed in order to constitute abandonment must be positive, unequivocal and inconsistent with the continuance of the contract. Golden v. Cornett, 154 Ky. 438, 157 S.W. 1076; Douglass v. Brooks, 242 N.C. 178, 87 S.E.2d 258; Mood v. Methodist Episcopal Church South, Tex.Civ.App., 289 S.W. 461; Sammons v. Hodges, Tex.Civ.App., 95 S.W.2d 734; Linscomb v. Goodyear Tire & Rubber Co., 8 Cir., 199 F.2d 431. In Ely v. Jones, 101 Kan. 572, 168 P. 1102, the Supreme Court of Kansas, referring to a well-known text writer quoted with approval as follows:

"In 2 Warvelle on Vendors (2d Ed.,) § 826, it is said:

" 'It has been held in some of the earlier cases that an agreement to rescind is as much an agreement concerning land as the original contract, and hence should be in writing; but all the later cases, both in England and the United States, are unanimous in affirming that a contract in writing, and by law required to be in writing, may in equity be rescinded by parol, and this even though the contract may have been under seal. Such rescission may be effected, not only by

an express agreement, but by any course of conduct clearly indicating a mutual assent to the termination or abandonment of the contract. It may consist either of words or acts, and all the circumstances attending the transaction may be shown to prove intention; but if evidenced by acts alone they must be such as leave no doubt as to such intention.' "

Accord: Gaido v. Tysdal, 68 Wyo. 490, 235 P.2d 741; where abandonment is relied upon, some of the courts require that a clear intention to abandon be shown. Kennedy v. Neil, 333 Ill. 629, 165 N.E. 148; Fulton v. Chase, 240 Iowa 771, 37 N.W.2d 920; Collins v. Collins, 348 Mich. 320, 83 N.W.2d 213, 68 A.L.R.2d 575. It may be the courts have adopted this standard because abandonment of a contract by a vendee has the same result as a forfeiture. They are referred to and regarded with disfavor in the same terms. "Abandonments and forfeitures are abhorrent to the law and all intendments are against them", Stockmen's Supply Co. v. Jenne, 72 Idaho 57, 237 P.2d 613, 617, where the court held the evidence of abandonment of the written contract was insufficient to counteract the requirement of notice to forfeit it. Cf. Carr v. Troutman, 125 Ind.App. 151, 123 N.E.2d 243.

Forfeitures are considered as odious in the law, Barnes v. Clement, 12 S.D. 270, 81 N.W. 301, and are not favored by the courts. Courts of equity will seize upon slight circumstances to relieve a party therefrom. Pier v. Lee, 14 S.D. 600, 86 N.W. 642. This court has said abandonment of a water right results from a concurrence of an intention to surrender and the actual relinquishment thereof. While conduct may support an inference of an intention to abandon a property right, it should not be lightly implied. Cundy v. Weber, 68 S.D. 214, 300 N.W. 17. The trial court's finding of abandonment is to be viewed in the light of these principles. The finding is Hofer's December 27, 1957 check of $200 to Orville F. Ford was received with the knowledge that Hofer had declared the

contract forfeited and at that time plaintiffs had abandoned all interest in the property. The evidence does not sustain this finding. Plaintiffs were then delinquent in making some payments required under the contract, yet they had paid all interest due and Hofer had extended the time of payment of the principal installments, thus waiving strict compliance thereof as the trial court found. The fact Fords moved to Herreid and abandoned the "premises" as alleged in the answer, was not an allegation of abandonment of the "contract" nor were their efforts to sell. In Floren v. Larson, 29 S.D. 63, 135 N.W. 672, 674, this court stated: "But evidence tending to prove that he (buyer) intended to sell his interest in the land and had bought land in Minnesota did not prove, or tend to prove, an abandonment of the contract * * *, or an intent on his part not to comply with the conditions of said contract." As there indicated, plaintiffs had the right to live on and farm the property, but no obligation to do so, and the right to sell and dispose of it or their personal property for their own best interests. Another indication of their intentions was that on October 28, over a month after the move, Fords paid Hofers $200 on the principal sum. Neither was Hofer's return of the $200 by his check to Mr. Ford on December 27, 1957, sufficient to show abandonment. It does not appear and is perhaps immaterial why Hofer returned it after having filed the Declaration of Forfeiture. It is not claimed that Mr. Ford said anything or received it as consideration for a release of the contract. He could assume that Hofers would proceed to enforce the contract, if they desired, by the rather speedy remedy of strict foreclosure or other appropriate action to determine the amount due and require payment of the balance due or vest title of the property in them and was returning the money with that in mind. This refund was not made to Mrs. Hofer and she did not know of it until a week later; she referred to it as not paid back but given or "fired back" as part of a mixup on the farm deal that was hard to understand. Her reference to her husband doing the dealing was about the subject of getting money from his father

to offer to Hofer. This was not authority for him to abandon or release her rights in the contract. During that winter to March 1958 it is undisputed vendees advised Hofer of negotiations to sell the farm to one Brantner with payment of the balance of the contract (which Hofer refused to accept as being a payment ahead of schedule) and a sale of a granary they had put on the farm and of the house thereon which Hofers agreed to complete in their answer. This was consistent with retention of, and compliance with, the contract rather than abandonment. In Yellowhair v. Pratt, 44 S.D. 136, 182 N.W. 702, the evidence showed homestead claimant had moved from the property for over two years, accepted employment, married and lived in another town, sold practically all of the personal property theretofore stored in the home and made attempts to sell; she testified she intended to return at some future date; this court reversed the trial court finding of abandonment with a statement the overwhelming evidence as to intent was against such finding. The trial judge's memorandum decision concluded Ford had decided to give up the farm when he advertised the farm property for sale. These acts do not measure up to the standard of being positive, unequivocal and inconsistent with the continuance of the contract; with this as a guide there is a clear preponderance of the evidence against the finding that Fords had abandoned the contract. The evidence on this subject was undisputed and not subject to the credibility test referred to in Brown v. Warner, 78 S.D. 647, 107 N.W.2d 1. In the face of Hofer's attempted termination of the contract without compliance with SDC 37.31 and his sale of the property to others in March, a relatively short time after he returned the $200, left little time for Fords to act. Their delay in bringing this action in August 1958 was no detriment to defendants. The facts in the cases cited by respondents differ from the case at bar; in some a delay of from 4 to 25 years sustained an abandonment. Kesterson v. Marsh, 107 Neb. 202, 185 N.W. 346; Engen v. Kincannon, N.D., 79 N.W.2d 160. Where a vendor wrongfully attempts to terminate the contract,

a vendee has the "right to elect to treat the same as mutually abandoned * * *", Hauert v. Kaufman, 45 S.D. 132, 186 N.W. 555, 556; Pirrung v. Blankenburg, 57 S.D. 45, 230 N.W. 219, but this does not prevent a vendee from tendering the amount due and seeking specific performance of the contract. Floren v. Larson, supra. Plaintiffs had improved the farm by constructing buildings on it and picking up rock. It had increased in value over the purchase price. Courts have given this consideration as affecting abandonment. Carr v. Troutman, supra; Westercamp v. Smith, 239 Iowa 705, 31 N.W.2d 347.

■ An examination of the record indicates the trial judge was of the belief that when Hofers sold the real estate to third parties they put it out of their power to perform the contract for deed with the plaintiffs and the only remedy which the plaintiffs as vendees had was "an action for damages for breach of contract." Leisch v. Baer, 24 S.D. 184, 123 N.W. 719 and Speer v. Phillips, 1909, 24 S.D. 257, 123 N.W. 722, were cited as authority. In Leisch as the defendand vendors agreed to sell land to which they had no title, it was impossible for them to specifically perform the contract by conveying the land as they had agreed to do and an action at law for damages was the only remedy; in Speer the plaintiff brought the action for damages alleging a breach of contract which he could elect to do. This belief must have resulted from the trial court's finding that the later purchasers in each instance had no knowledge of any claims of plaintiffs thereto and they purchased the respective tracts from Hofers for value and in good faith. This does not follow. SDC 51.1620 provides that the recording of a duly acknowledged instrument, which includes a contract for deed, is constructive notice of the execution of such instrument to all purchasers and incumbrancers subsequent to the recording. Defendants who later purchased the land from Hofer were not purchasers in good faith, but subject to the rights of plaintiffs and stand in the same legal position as Hofers. 5 Am.Jur., Records and Recording Laws §§ 86, 87 and 112; 92 C.J.S. Vendor and Purchaser

§ 304. At the trial each of these purchasers testified that they not only lived near the land involved and knew plaintiffs resided on it, but also that they knew plaintiffs had bought the land. Thus they had both constructive notice and actual knowledge of their rights. They are considered as purchasers mala fide and are not entitled to protection as bona fide purchasers. 55 Am. Jur., Vendor & Purchaser, § 685; Vaughn v. Rosencrance, 73 S.D. 36, 38 N.W.2d 822.

The judgment appealed from is reversed.

SMITH, P. J., and ROBERTS and RENTTO, JJ., concur.

HANSON, J. (dissenting). The only issue here is whether the trial court's finding of abandonment is sustained by the evidence. Such finding should not be disturbed by this Court unless it is against the clear preponderance of the evidence viewed in the light most favorable to the decision. Furthermore, "It is not the function of this court to place itself in the position of the trial court to determine the credibility of witnesses and the weight to be attached to their testimony and to exercise independent judgment as to whether it would have made the same or similar fact determination. It was with the trial court, as the trier of questions of fact, to accept as true or reject as untrue testimony given before it, and, the credibility of witnesses having entered into the findings, this court will not disturb such findings, unless the evidence clearly preponderates against them." Houck v. Hult, 63 S.D. 290, 258 N.W. 142, 144.

The intention to abandon in this case can only be gathered by oral conversations and the actions and conduct of the parties. This necessarily involves the credibility of witnesses and the weight and value of their testimony. In this regard, it is obvious the trial Judge was not impressed with some of the plaintiff's evidence as he points out in his Memorandum Decision that "it conflicted in several instances" with Ford's earlier testimony.

In my opinion there is ample evidence to sustain the finding on abandonment. In the summer of 1957 Hofer advised Ford the contract would be terminated unless the delinquent taxes and one installment on principal was made in the fall. Instead of complying the Fords made a payment of $200 on October 7, 1957. At the time they were apparently hopelessly in default and had moved off the premises. They were delinquent in the payment of three annual principal installments in the amount of $1,300, taxes for the years 1955 and 1956, and insurance premiums. In addition the taxes for the year 1957 in the amount of $286.60 were shortly due and payable.

The Fords had a public auction of their farm goods and machinery on December 21, 1957. About ten days before the sale the parties had a conversation in which Hofer told Ford he was taking the farm back and as Ford was having a sale he would cancel the chattel mortgage and release the note for the reason "if I am taking the land back, I did not expect any more payment". Hofer then canceled the chattel mortgage and released the note so Ford's personal property could be sold at public auction free of such lien. Later on in December Hofer gave Ford a check in the amount of $200 marked "refund on land payment". This check was accepted and cashed by Ford on December 30, 1957. In this respect the trial court properly found "That said 'refund' was received with the knowledge that the defendants Hofer had declared the contract forfeited, and that at said time said plaintiffs had abandoned all interest in said property, and had no intention of continuing with said contract or complying with the terms thereof". In March 1958 Hofer sold the land to other persons who entered into possession and started farming operations without objection on the part of the Fords. Subsequent to these sales the court found the Fords "removed from said property and claimed as their own, certain woven wire fence located thereon and also a granary. That they also attempted to sell the dwelling house located thereon under a verbal agreement with the defendants Hofer prior to the commencement of this action that

if they sold said dwelling house or removed the same from the premises that they could retain the proceeds of sale or have as their own said dwelling house".

These actions and this course of conduct are consistent only with an intention to abandon the contract on the part of the Fords. As the trial court observed "It does not seem reasonable that Ford would take back the $200.00 payment he had made on the land contract, and still maintain he did not intend to give up the contract. Ford may not have known that a Declaration of Forfeiture was filed in the Register of Deed's office, but the facts certainly bear out Hofer's contentions that he told Ford he was going to take back the land. Even after Ford discovered in the spring of 1958 that Hofer had sold the farm he did not claim any interest in it. Rather, since the farm was sold at a figure greater than the contract price, it appears Ford wanted to share in the profit".