COLLINS v. COLLINS.

1. SPECIFIC PERFORMANCE—LAND CONTRACTS—DISCRETION OF COURT.
   Specific performance of a land contract is discretionary and not a matter of right.

2. VENDOR AND PURCHASER—ABANDONMENT OF LAND CONTRACT.
   Abandonment of a land contract by the purchaser is shown where he positively and absolutely refuses to perform the conditions of the contract, such as failure to make payments due, accompanied by other circumstances clearly showing an intention to abandon the contract; abandonment usually being a question of fact, although the acts and conduct may be so decisive and unambiguous as to justify the court in deciding the question as a matter of law.

3. SAME—ABANDONMENT OF LAND CONTRACT—EVIDENCE.
   Plaintiff purchasers under land contract for undivided half interest in a farm may not be said to have abandoned the contract, where it appears they have paid all taxes and assessments on the land, kept it adequately insured in a way to protect the vendor's interest, made $6,500 worth of improvements on the house and barn, occupied the house, farmed the land, sold timber and collected the rents.

4. SAME—VENDEE'S DEFAULT—WAIVER OF FORFEITURE.
   The remedies which a vendor has for a defaulting vendee under their land contract may be waived expressly or by implication and, if waived, a valid forfeiture will have to await a new default or at least a quickening of the old one by demand for performance of the contract and reasonable opportunity afforded the vendee to awaken from the repose of imagined security.

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur, Specific Performance § 93.
[2] 12 Am Jur, Contracts § 431; 55 Am Jur, Vendor and Purchaser § 437.
[3] 55 Am Jur, Vendor and Purchaser § 439.
[4–6] 55 Am Jur, Vendor and Purchaser § 440.
[7] 49 Am Jur, Specific Performance § 92 et seq.

5. SAME—WAIVER OF DEFAULTS.

A vendor under a land contract who repeatedly accepts payments after due from the purchaser and habitually indulges him in delinquency thereby waives future strict compliance with the terms of the contract as regards time of payment except as the vendor thereafter gives notice of intention to require prompt payment in the future.

6. SAME—WAIVER OF DEFAULT BY CONDUCT OF VENDOR.

The vendor's long acceptance of delayed payments under a land contract by the purchasers, the loaning of money to the latter and the collection of rents by the purchasers *held,* to show that the vendor did not intend to take any action to foreclose the land contract but does show that the vendor waived promptitude in payments required by the contract.

7. SPECIFIC PERFORMANCE—LAND CONTRACTS—INTEREST.

Purchasers under land contract who had not abandoned it *held,* entitled to decree of specific performance, decree to provide for payment of balance due thereunder with interest at rate provided for in the contract.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted April 5, 1957. (Docket No. 6, Calendar No. 47,058.) Decided May 17, 1957.

Bill by Marshall P. Collins and Jean Collins against John Collins for specific performance of land contract to sell a remaining undivided half interest in farm. Cross bill by defendant asking for decree entitling him to such half interest in property by reason of abandonment of contract. Decree for defendant dividing to the parties as tenants in common the proceeds from a sale of a right-of-way. Plaintiffs appeal. Reversed and remanded.

*Vander Veen, Freihofer, Cook & Bryant,* for plaintiffs.

*Allaben, Davids & Massie,* for defendant.

SHARPE, J. This is an appeal from a denial of a decree for specific performance of a land contract. Defendant also appeals for failure of the trial court to grant him relief under his cross bill.

The essential facts are not in dispute and are as follows. Prior to 1938 the 180-acre farm in question was owned by Philander Collins. In 1938 he deeded a 1/2 interest in the farm to each of his 2 sons, Frank Collins and John Collins, reserving to himself a life estate in the property. Philander died in 1941, and shortly thereafter John Collins entered into a land contract with Frank Collins, whereby John Collins agreed to sell his 1/2 interest to Frank Collins for the sum of $5,000, payable at the rate of $50 per year and interest, with the provision that 50% of the purchase price was to be paid within a period of 10 years.

In March, 1950, there was a balance due on the contract in the amount of $4,700. It is apparent that the brothers considered this contract abandoned as on March 21, 1950, plaintiff, Marshall P. Collins, took over the obligation owed by his father by the execution of a new land contract running from defendant, John Collins, to Marshall P. Collins and Jean Collins, his wife. Under this contract plaintiffs were obligated to pay $50 or more per year commencing March 1, 1951, with interest at 5% payable semiannually, the entire balance to be paid on or before March 1, 1960, with a provision for additional time under certain circumstances. Plaintiffs made the following payments: September 1, 1950, $142.50; March 1, 1951, $150; September, 1951, $150; March 1, 1952, $115; September 1, 1952, $150; May 4, 1953, $150; September 1, 1953, $150.

Insurance on the farm buildings since 1950 was in the name of plaintiffs, with loss payable clause to defendant.

Plaintiffs built an apartment on the home at a cost of approximately $4,000 and rented the same to third parties. During the period of the contract plaintiffs borrowed from defendant the sum of $2,300 for the purpose of paying a special assessment for a drain on the farm and some of the loan was used to defray expenses of building the apartment. In the spring of 1955 a discussion was had between Marshall and John Collins relative to the sale of timber on the farm. Plaintiffs sold this timber for the sum of $600 and defendant thought they should have sold it for much more.

It also appears that on or about June, 1955, the State highway department began negotiating with the parties for a right-of-way through the farm. As a result of these negotiations the State highway department offered the sum of $54,000 for the entire farm, $42,000 for the farm, excepting 23 acres which would include all of the buildings, or $39,000 for a 200-foot right-of-way. The offer of $39,000 was accepted and the money deposited in a bank awaiting the determination of who was entitled to it. With this fabulous sum of money in sight the parties activated themselves in taking a greater interest in the contract and in protecting their rights under the same. On or about August 12, 1955, plaintiffs filed a bill in chancery for specific performance of the contract, alleging in said bill of complaint:

"That plaintiffs have fully performed all of their obligations under said contract except as hereinafter stated; they have made payments thereunder, have paid for all taxes and insurance on the property, have made improvements thereon, have kept the property in good repair, and in general have fully performed all of their obligations thereunder, except that plaintiffs show that they have paid no moneys to defendant thereunder since on or about September 1, 1953, at which time defendant, know-

ing plaintiffs were having financial difficulties, told them he was in no hurry for his money and they could catch up on their other obligations. Therefore plaintiffs made no further payments to defendant until about July 13, 1955, at which time their attorney wrote to the attorney for defendant in order to set a time for closing the deal by payment of the entire unpaid balance of said contract to defendant. That as of the present date, the unpaid balance under said contract is $4,961.25, which includes interest to September 1, 1955."

The defendant filed an answer and cross bill in which it is alleged that plaintiffs have failed to pay anything on the land contract since September 1, 1953, and that ever since said date the contract has been terminated, abandoned and void, both by its terms and the actions of the parties. In his cross bill defendant seeks damages for plaintiffs' acts of waste, negligence and failure to keep the buildings in good repair and for timber unlawfully sold from the farm.

Plaintiffs urge that defendant by his actions waived a strict performance of the contract in that no demand was made by defendant to make up any delinquent payments or to pay the full balance due under the contract; that defendant told plaintiffs in regard to the March, 1954, payment, "That's all right to let it go," and that after plaintiffs received this assurance they borrowed $2,300 from defendant to help pay a bank loan and overdue taxes and assessments. Plaintiffs also urge that defendant never properly declared a forfeiture of the land contract.

It is urged on the part of defendant that plaintiffs abandoned the contract prior to the right-of-way purchase by the State of Michigan. In support of this claim defendant relies upon the failure of plaintiffs to keep up payments on the land contract

for 2 years, in committing waste and in nonpayment of taxes. Defendant also urges that plaintiffs' many defaults effectuated a forfeiture of the land contract.

The cause came on for trial and each of the parties offered evidence in support of their respective claims. The trial court entered a decree which provided:

"This matter having come on to be heard upon the plaintiffs' bill of complaint for specific performance of land contract and defendant's answer and cross bill and plaintiffs' reply, and the court having heard the testimony produced in open court by both parties, the arguments of their respective counsel, and having read the briefs of their respective counsel, and the court having filed a written opinion therein, therefore in accordance with said opinion, the court here finds that plaintiffs did not comply with the terms of the land contract and under the facts presented should not be decreed specific performance, and that by plaintiffs' default they forfeited all right or claim under the contract and it was not necessary for defendant to give written notice of forfeiture, and therefore

"It is ordered, adjudged and decreed that plaintiffs are not entitled to specific performance and their bill of complaint is therefore dismissed.

"It is further ordered, adjudged and decreed that the $39,000 paid by the Michigan State highway department to the respective parties herein for the right-of-way across their farm and which sum is now on deposit at the Michigan National Bank at Grand Rapids in savings account No 30786 for safekeeping awaiting the outcome and final decision in this case as per court order heretofore entered in this cause on May 4, 1956, be divided as follows:

"To plaintiffs, Marshall P. Collins and Jean Collins, husband and wife, $21,500,

"To defendant, John Collins, $17,500.
and that any additional sums in said savings account over and above the $39,000 above mentioned shall be divided equally, that is, 1/2 thereof to plaintiffs, Marshall P. Collins and Jean Collins, husband and wife, and 1/2 thereof to defendant, John Collins."

In an opinion the trial court stated:

"While specific performance is not a matter of right and rests in the discretion of the court, it may not be arbitrarily refused. The plaintiffs have not complied with the contract in accordance with its terms, and it is admitted that the defendant has indulged them in so doing. A reading of the terms of payment of this contract show[s] that they are so generous on the part of the defendant that it vividly discloses defendant's desire to help his nephew. At this point it should be noted that the plaintiff came into ownership of the other undivided 1/2 of this farm through inheritance from his father, Frank Collins, who died in 1953. * * *

"The testimony discloses that plaintiffs have spent about $4,000 in improving the buildings and appurtenances, but they have parted with nothing that entitled them to demand specific performance. They did not comply with the terms of the contract, and under the facts as presented should not be decreed specific performance. The defendant is ready to transfer title of an undivided 1/2 interest upon receiving a part of the right-of-way money. *St. Pierre* v. *Masson,* 243 Mich 60; *Johnston Realty & Investment Co.* v. *Grosvenor,* 241 Mich 321.

"By plaintiffs' default they forfeited all right or claim under the contract, and it was not necessary for the defendant to give written notice of forfeiture. Plaintiffs claim defendant waived performance but this claim of waiver comes at a time when the exigencies are working in his favor."

Each of the parties appeal, but the sole question for our Court to decide is whether there was a waiver

of the terms of the contract or if plaintiffs abandoned the same.

It is a fundamental rule that specific performance of a land contract is discretionary and not a matter of right, see *Fisk* v. *Fisk,* 328 Mich 570. We shall first discuss the question of abandonment. The rule on abandonment is well stated in *Dundas* v. *Foster,* 281 Mich 117, 120, where we quoted with approval from 66 CJ, Vendor and Purchaser, § 295, pp 731, 732, as follows:

" 'Abandonment by the purchaser is shown * * * where he positively and absolutely refuses to perform the conditions of the contract, such as a failure to make payments due, accompanied by other circumstances, * * * or where by his conduct he clearly shows an intention to abandon the contract. * * * As a general rule whether or not the purchaser's acts and conduct amount to an abandonment of the contract is a question for the jury; but such acts and conduct may be so decisive and unambiguous as to justify the court in deciding the question as a matter of law.' "

In the case at bar plaintiffs have (a) paid all the taxes and assessments on the land; (b) kept it adequately insured in their names, with loss payable clauses, as usual in land contract situations, to John Collins; (c) made valuable improvements, to the extent of about $4,000 on the house and about $2,500 on the barn; (d) occupied the house, farmed the land, sold timber, and collected all rents.

In our opinion, the above enumerated acts of plaintiffs did not indicate an abandonment of the property.

The rule as to waiver is well stated in *Zadigian* v. *Gard,* 223 Mich 147, 152, 153, where we said:

"The law does not favor forfeitures, and he who plants himself upon a forfeiture must look well to

where he stands. It is true the law gives a vendor the benefit of remedies for defaults of a vendee, but the vendor may waive such remedies, expressly or by implication. If a vendee in default is recognized by the vendor as having existing rights under the contract, the default becomes quiescent, and a valid forfeiture will have to await a new default, or at least a quickening of the old one by demand for performance of the contract and reasonable opportunity afforded such a vendee to awaken from the repose of imagined security. *Waller* v. *Lieberman,* 214 Mich 428; *Fry* v. *Miller,* 220 Mich 463; *Letinsky* v. *Smith,* 220 Mich 465."

In *Sliwinski* v. *Gootstein,* 234 Mich 74, 78, this Court stated:

"If a vendor repeatedly accepts payments after due from the purchaser, habitually indulges him in delinquency, he thereby waives, as to future payments, strict compliance with the terms of the contract as regards time of payment, and he must give the said preliminary notice or demand before he can declare a forfeiture, and if forfeiture be declared without the preliminary notice, and ejectment instituted, the waiver may be used in defense .of the action.

"It might be well to add that reform respecting such delinquency may be accomplished by the vendor's giving to the purchaser notice of his intention to require prompt payment in the future."

In our opinion, the long acceptance of delayed payments, the loaning of money to plaintiffs, the collection of rents by plaintiffs clearly shows that defendant did not intend to take any action to foreclose the land contract, but does show that defendant waived the prompt payments required by the land contract.

In this case we are not called upon to discuss what appears to be an enormous price paid for the right-of-way as that issue is not before us.

Plaintiffs are entitled to a decree for specific performance. The cause is remanded to the superior court of Grand Rapids for the entry of such a decree. The decree will provide that out of the money on deposit in a Grand Rapids bank defendant will be entitled to the balance due on the contract, plus interest at the rate provided for in the contract. Plaintiffs may have costs.

DETHMERS, C. J., and SMITH, EDWARDS, VOELKER,. KELLY, CARR, and BLACK, JJ., concurred.