No. 80-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

J. LAWRENCE STODDARD,

Plaintiff and Appellant,

vs.

MARVIN H. GOOKIN and
SHARON GOOKIN,

Defendants and Respondents.

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Fallon,
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellant:

Gene Huntley argued, Baker, Montana

For Respondents:

Stephens Law Firm, Billings, Montana
Robert Stephens, Jr. argued, Billings, Montana

Submitted: January 13, 1981

Decided: March 4, 1981

Filed: MAR 4 - 1981

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

J. Lawrence Stoddard appeals from a judgment entered against him in the Sixteenth Judicial District Court, Fallon County, denying his claims against Marvin H. Gookin and Sharon Gookin for cancellation of a deed, damages or in the alternative, specific performance.

We find the issues in this appeal are:

1. Whether the escrow bank should have delivered to the Gookins a deed terminating Stoddard's interest in the real property.

2. Whether the District Court should have allowed evidence of an oral contract to purchase an interest in real estate.

3. Whether the District Court should have made findings of fact and conclusions of law in this case.

4. Whether the evidence in the case is sufficient to support the judgment.

In 1970, Marvin and Sharon Gookin entered into a written five-year lease of ranch property with parties identified as "McGhee". This lease included an option to the Gookins to buy the real property for a sum of $100,000.

While the lease was in effect, J. Lawrence Stoddard and the Gookins agreed orally that the Gookins would exercise their option to purchase the McGhee property, that the contract for the purchase of the McGhee property would show Stoddard and his wife and the Gookins as cotenant-purchasers, and that thereafter, Stoddard would pay $30,000 to the Gookins in exchange for their cotenancy interest in the contract for the McGhee property.

Stoddard and the Gookins retained a Baker attorney, R. L. Culver, to prepare the necessary documents to carry out

-2-

their agreement. The attorney prepared a contract for deed, warranty deeds, and an escrow receipt for deposit of the instruments with the Bank of Baker.

On June 1, 1973, a contract for deed was executed between the McGhees as sellers and the Stoddards and Gookins as cotenant purchasers. Stoddard made the downpayment of $10,000 to the McGhees. The Stoddards and the Gookins each signed warranty deeds, that, if recorded, would respectively convey to the other sole title to the ranch property. A promissory note for $30,000 was executed by Stoddard, due and payable to the Gookins on November 1, 1973. The note and the deeds were to be held in escrow at the Bank of Baker. An escrow receipt was prepared, which included the following instructions for the escrow holder:

> "If said $30,000.00 note is paid on or before November 1, 1973 by J. Lawrence Stoddard [the escrow agent shall] . . . deliver the deed executed by Marvin H. Gookin and wife to J. Lawrence Stoddard, unto the said J. Lawrence Stoddard, and destroy the remaining deed.

> "If said note, plus interest, is not paid by November 1, 1973, then deliver to Marvin H. Gookin, the warranty deed executed by J. Lawrence Stoddard and wife to Marvin H. Gookin and destroy the other deed."

An additional part of the escrow receipt provided:

> "This escrow is taken expressly subject to terms, exceptions, provisions and conditions herein stated which are acceptable and approved by all the parties accepting this receipt or interested in the escrow being as follows:

> ". . .

> "5. Time is and shall be insofar as the escrow agent is concerned of the essence of this agreement and part of the consideration, and a waiver in one instance to a time condition shall not operate to prevent an objection for any subsequent default in point of time."

It may be gleaned from the testimony, though with difficulty, that on or approximately November 2, 1973, Marvin and Sharon Gookin and J. Lawrence Stoddard entered into a different arrangement. Stoddard agreed to pay the $30,000 in two installments, $15,000 "in a very short time" and an additional $15,000 on or after January 1, 1974. The new arrangement was for the Gookins' tax advantage. The parties further agreed that the Gookins, instead of moving from the ranch premises immediately upon the payment of the $30,000 as originally contemplated, would be allowed to remain on the property for an unspecified period of time in 1974 to winter livestock on the ranch.

On November 2, 1973, upon request by the Gookins for payment of the first $15,000, Stoddard paid $2,000, and stated that the remaining $13,000 amount would be paid after he sold some stock through a stock broker. Gookin made several additional requests for this payment without result. On November 24, 1973, Marvin Gookin found it necessary to leave Baker for Minnesota because of the illness of his father. He was gone from November 24 until December 6, 1973. Before he left, he talked to Attorney Culver, and asked Culver to give Stoddard an additional four days for the payment of the balance of the $15,000, with notice that if the payment were not made, the Gookins would seek to get the deeds which were then supposed to be deposited in escrow. At that point, no deposits of the instruments for escrow had been made. One of the reasons given was that Mrs. Stoddard had delayed in signing the deed. On November 26, 1973, Culver took the instruments to the Bank of Baker, and deposited them in escrow. The instruments deposited included the two warranty deeds and the promissory note, dated June

-4-

1, 1973, which by its terms, was payable on or before November 1, 1973. Shortly after the instruments had been deposited with the escrow bank, Attorney Culver made contact with Stoddard and advised him that he must make payment within a few days. Stoddard testified that within a few days he brought the balance of the payment to Culver's office, but Culver advised him to take the money to the Bank of Baker. Stoddard did not do this. On December 6, 1973, after Marvin Gookin returned to Baker, and found that the payment had not been made by Stoddard, he got in touch with a Billings attorney. As a result, the Billings firm wrote to Stoddard on December 7, 1973, as follows:

"You are hereby notified that any prior agreement that you may have had to purchase certain land from Marvin H. Gookin and Sharon Gookin in Range 59 East, Fallon County, has been breached by your failure to pay sums when due. You are further notified that by reason of this breach, the agreement is terminated and all sums previously paid are forfeited.

"You are further advised that you have 10 days from the date of this letter to remove all your livestock from the Gookin property."

On the same day, the Gookins went to the Bank of Baker, and obtained from the bank the instruments which had been deposited in escrow. They recorded the warranty deed granting them sole title to the property.

On or about December 10, 1973, Stoddard came to the Gookins' residence and attempted to tender the balance of the first $15,000 payment. Marvin Gookin refused to accept the same, saying that the deed was recorded and the matter was closed.

Following that time, the Gookins have continued to possess the ranch property, and have made the annual $9,000 payments to the McGhees as required by the contract. At the time of trial, three additional $9,000 payments remained to be made to satisfy the McGhee contract.

Stoddard brought suit against the Gookins to cancel the warranty deed, to quiet the title in him to the ranch property, and to obtain specific performance of the agreement by which the Gookins agreed to transfer their cotenancy interest to Stoddard.  The court tried the case with a jury.  The District Court, in submitting the issues to the jury, gave this instruction:

> "The plaintiff brings this action to cancel
> the deed from himself to defendants
> dated June 1, 1973.  If the deed is canceled
> the result will be that the plaintiff and the
> defendant, Marvin Gookin, will each be the
> owner of an undivided one-half interest in the
> land in question.
>
> "The plaintiff has also elected to claim that
> the contract between the parties as shown by
> the escrow receipt and its oral extensions be
> enforced.  If he is successful in this claim,
> he will be the owner of the entire property
> on paying for it and making the other payments
> mentioned in these instructions."

Interrogatories were submitted to the jurors, and they answered as follows:

> "INTERROGATORY NO. 1:  Is the plaintiff, under
> the court's instructions entitled to cancellation
> of the deed from him dated June 1, 1973? (Answer
> 'Yes' or 'No')                                No
>
> " . . .
>
> "INTERROGATORY NO. 4:  Is the plaintiff, under
> the court's instructions entitled to specific
> performance of the purchase agreement between
> plaintiff and defendant?  (Answer 'Yes' or 'No')
>                                               No"

Based upon the answers to the interrogatories by the jury, the District Court entered judgment against Stoddard. Stoddard made a motion that the court make findings of fact, and conclusions of law which the court declined to do. Thereafter appeal was perfected to this Court.

In his appeal, Stoddard attacks first the delivery of the warranty deed by the escrow bank to Gookin.  Stoddard contends that on the date the escrow bank accepted the escrow documents, November 26, 1973, the escrow contract was

-6-

already impossible to perform, because the promissory note upon which the escrow depended was due and payable November 1, 1973. Stoddard further contends that the delivery of the deed by the escrow holder was ineffective for any purpose under Hart v. Barron (1949), 122 Mont. 350, 204 P.2d 797. Gookin argues that it is clear that an extension of time had been agreed to at the time of the deposit, that the escrow contract does not constitute the entire agreement between the parties, and that the "time is of the essence" clause in the escrow receipt applies.

We first determine that the Stoddard warranty deed was improperly delivered to the Gookins by the escrow bank. At the time of the escrow deposit, November 26, 1973, the escrow instruments no longer reflected the true agreement between the parties at that time and the "time is of the essence" clause in the escrow receipt applied only to the escrow agent.

The object of an escrow, as with any other contract, "must be lawful when the contract is made and possible and ascertainable by the time the contract is to be performed." Section 28-2-602, MCA. To constitute an instrument in escrow, it must be deposited with the intention that it shall take effect upon the performance of an express condition or the happening of a certain event. Conner v. Helvik (1937), 105 Mont. 437, 73 P.2d 541. When the instruments here were deposited, upon the condition that a $30,000 promissory note payable November 1, 1973 be paid, it was foreordained that the warranty deed be delivered to Gookin. This was not the arrangement that the parties mutually testified was their true agreement at the time of the escrow deposit. This determination regarding the delivery of the deeds by the escrow holder does not end this case, however.

We come now to the second issue presented for our review, whether the District Court should have allowed evidence of an oral contract between the parties which modified the written documents prepared to carry out the agreement.

The generally applicable rules are familiar. Written contracts supersede all oral negotiations (section 28-2-904, MCA) which precede or accompany the execution of the written contracts. Davison v. Casebolt (1969), 154 Mont. 125, 461 P.2d 2.

A written contract may be modified by a subsequent agreement of the parties, but only by a contract in writing or by an executed oral agreement (section 28-2-1602, MCA). This is a rule of substantive law and not of evidence. Higby v. Hooper (1950), 124 Mont. 331, 221 P.2d 1043.

An oral agreement altering a written agreement is not an "executed oral agreement" within the statute authorizing modification of written contracts by an executed oral agreement unless its terms have been fully performed, and performance on one side is not sufficient. Ikovich v. Silver Bow Motor Car Co. (1945), 117 Mont. 268, 157 P.2d 785.

An oral contract to procure a conveyance of certain land, and to transfer an undivided interest to another is a "contract for the sale of lands" within the statute of frauds, and an action does not lie to enforce it. Dunphy v. Ryan (1886), 116 U.S. 491, 6 S.Ct. 486, 29 L.Ed. 703.

A note given in connection with the sale of lands which contains no reference to the terms of the contract of sale is not a sufficient memorandum under the requirements of the statute of frauds. Eccles v. Kendrick (1927), 80 Mont. 120, 259 P. 609.

-8-

Part performance, sufficient to take an oral contract out of the statute of frauds, is an act or performance which puts the party performing it in such position that non-performance would be a fraud upon him. Payment alone is not sufficient part performance. Ducie v. Ford (1888), 8 Mont. 233, 19 P. 414, aff'd. 138 U.S. 587, 11 S.Ct. 417, 34 L.Ed. 1091.

Payment of the price of the land alone is not a sufficient part performance to take the transaction out of the statute. Ducie v. Ford, supra; nor is part payment of the purchase price, Boulder Valley Ditch Mining & Milling Co. v. Farnham (1892), 12 Mont. 1, 29 P. 277. There must be some additional consideration such as taking possession, making improvements or other elements showing consideration beyond the payment of the price. Shaw v. McNamara & Marlow (1929), 85 Mont. 389, 278 P. 836; Kettlekamp v. Watkins (1924), 70 Mont. 391, 225 P. 1003.

The fact that an attorney represented one or both of the parties does not bind either of the parties to the actions of the attorney where there is not in existence a writing signed by the party to be bound indicating that the attorney had authority to act on that party's behalf. Schwedes v. Romain (1978), ___ Mont. ___, 587 P.2d 388, 35 St.Rep. 1784.

However, a party may be estopped from relying on the statute of frauds. Fiers v. Jacobson (1949), 123 Mont. 242, 211 P.2d 968. Where one party to an oral contract of purchase of land has relied on the other party so that the effect of the statute of frauds would be to perpetrate a fraud on the other party, equity will regard the case as having been removed from the operation of the statute and will enforce

-9-

the contract if necessary or grant other appropriate relief. Epletveit v. Solberg (1946), 119 Mont. 45, 169 P.2d 722.

Under these rules, where as here, both parties agree that there was an oral modification of their written agreements, evidence of the oral modification is admissible. See, Corbin on Contracts, § 574.

Applying the foregoing rules to the fact situation before us, it is clear that the oral agreement of Stoddard to "cash out" the Gookins' rights under the option, was superseded by the written instruments that followed. Thus, the contract for deed between the McGhees on the one hand and Stoddard and the Gookins as cotenants on the other, plus the promissory note of $30,000 due November 1, 1973, and the execution of the escrow receipt on June 1, 1973, constitute written evidence of the contract between the parties at that time. As of that date, Stoddard's right to purchase the one-half undivided interest of the Gookins may be determined from those instruments. However, on or about November 1, 1973, the parties entered into an oral modification of their written agreement relating to the method of payment by Stoddard. For the Gookins' tax benefit, and for allowing the Gookins to remain on the ranch through the winter to take care of their stock, the $30,000 was to be divided into two payments, one payable in November and the other after January 1, 1974.

As further consideration, Stoddard paid $2,000 on November 2, 1973. He had earlier paid the full $10,000 for the downpayment on the McGhee contract. While it appears clear from the evidence that if Stoddard did not make the $15,000 payment, he would forfeit his right to his one-half interest in the property, it is unclear that he would also

forfeit the earlier monies that he had paid. It is also unclear whether there was a specific time agreed upon for payment of the full first installment of $15,000. There does not appear to be any agreement that time was of the essence of their modified arrangement and it is a fact question to be determined by a trier of fact whether the tender by Stoddard was timely. The statement by Gookin to Attorney Culver on November 24, 1973, that he would grant Stoddard four additional days to make payment, is not in itself a contract, but the utilateral act of one party which does not appear to have been assented to by the other party. Attorney Culver, of course, had no authority to bind Stoddard.

We are mindful of the fact that in order for time to be of the essence of a contract, it is sufficient if such intent is clearly expressed between the parties and the words "time is of the essence" need not be used. Johnson v. Metropolitan Life Ins. Co. (1938), 107 Mont. 133, 83 P.2d 922. Of course, if time were not of the essence here, the law implies that the payment by Stoddard could be made within a reasonable time. Sections 28-3-601, -602, MCA. The time for the payment of money only as performance is "immediately upon the thing to be done being exactly ascertained". Section 28-3-601, MCA.

This cause must be remanded to the District Court for a determination by a trier of fact of the following fact issues:

1. Under the modified agreement, when was payment to be made by Stoddard?

2. Did Stoddard make or tender timely payment under the modified agreement?

3. If the answer to the second issue is "no", did the modified agreement include a forfeiture of Stoddard's earlier payments if he did not perform the modified agreement?

-11-

On retrial, it is not relevant evidence that the Gookins lost a downpayment on a trailer house in Billings. The purposes for which they would have used the monies had Stoddard made payment are also not relevant.

Since this was a case in equity, the District Court should have entered findings of fact and conclusions of law even though the cause here was tried to a jury. The interrogatories answered by the jury do not set forth the facts upon which the jury made its determination. Unless both parties agreed to be bound by a jury decision without further findings by the court, the findings of the jury were advisory only and the District Court was required to make findings under Rule 52, M.R.Civ.P.

The purpose of requiring findings of fact is three-fold: (1) as an aid in the trial judge's powers of adjudication; (2) for purposes of res judicata and estoppel by judgment; and (3) as an aid to the appellate court on review. Marriage of Barron (1978), 177 Mont. 161, 580 P.2d 936.

We reverse this cause and remand to the District Court for further proceedings. An appropriate judgment shall be entered by the District Court after the factual determinations herein indicated are made. The court will determine, by itself or with an advisory jury, Stoddard's damages if he be found entitled to an undivided interest in, or to all of the real estate. The District Court will make such further orders for both parties as may be appropriate under the findings of the trier of fact. Each party shall bear his or their own costs in this appeal.

John C. Sheehy
_____
Justice

-12-

We Concur:

_____
Chief Justice

_____

_____

_____
Justices