No. 82-144

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

J. LAWRENCE STODDARD,

      Plaintiff and Respondent,

  -vs-

MARVIN H. GOOKIN and SHARON GOOKIN,

      Defendants and Appellants.

---

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Fallon, The Honorable
Nat Allen, Judge presiding.

Counsel of Record:

    For Appellants:

        Stephens & Cole; Robert L. Stephens, Billings,
        Montana

    For Respondent:

        Gene Huntley, Baker, Montana

---

Submitted on Briefs: November 24, 1982

Decided: April 14, 1983

Filed: APR 14 1983

*Ethel M. Harrison*
———————————————————
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The defendants, Marvin and Sharon Gookin, appeal a judgment of the Fallon County District Court ordering specific performance of a land sale contract. The order requires that defendants execute a deed to plaintiff for the ranch land and that defendants also assign to plaintiff leases that defendants held for use of other land. In return, plaintiff was ordered to pay $28,000 to defendants with interest at 10 percent from date of judgment. This case comes to us for a second time. In Stoddard v. Gookin (1981), ___ Mont. ___, 625 P.2d 529, 38 St.Rep. 326, we remanded the case for further evidence, and for a determination of when the first $15,000 payment of a total $30,000 payment was due, and whether time was of the essence.

The evidence at the second trial established that the first $15,000 payment was due on November 1, 1973 and the second $15,000 payment was due after January 1, 1974. Although plaintiff did not pay the first $15,000 on November 1, 1973, he paid $2,000 on November 2 and on later occasions, before January 1, 1974, tendered the remaining payment. The trial court held time was not of the essence for this payment and that plaintiff had properly tendered the $15,000. The first point of appeal is whether time was of the essence for the payment of the first $15,000, and whether plaintiff made a timely tender assuming that time was of the essence. The second point of appeal assumes that specific performance was properly granted but questions the equities of the adjudication of the rights of the parties. Defendants argue that during the time the lawsuit was pending they had

2

possession of the land and paid off the underlying contract for the purchase of the ranch. They argue that they should be reimbursed for this amount plus the interest they paid over the course of the contract. We affirm the grant of specific performance but remand for the court to adjust the rights of the parties.

The background facts are as follows. Defendants had a five year lease for ranch lands in Fallon County from the McGhees. This lease gave them an option to purchase the land for $100,000 at any time during the five-year period, by paying $10,000 down and agreeing to pay the remaining $90,000 at 7 1/2 percent interest. This option also carried with it an assignment of grazing leases held by the McGhees. During the second year of the lease, defendants, although not actually wanting the land for themselves, agreed to exercise the option on behalf of the plaintiff--the plaintiff was to become the ultimate owner.

Plaintiff was to provide the $10,000 downpayment, papers would be executed naming the defendants and plaintiff as undivided cotenants, and then when plaintiff paid $30,000 to the defendants, defendants would deed their interest in the property to plaintiff, and plaintiff would take over the contract payments to the McGhees.

Plaintiff provided the $10,000, defendants exercised the option and all the papers were properly prepared and executed. The issues of this appeal on the merits of specific performance focus on how and when plaintiff was to make the first $15,000 payment of the total $30,000 payment he was to make to defendants.

In deciding the first appeal we held that after the option had been exercised, the plaintiff and defendants, at

3

defendants' request, agreed to an oral modification of the terms for paying the $30,000. At first the $30,000 was to be paid on November 1, 1973. However, defendants then asked that $15,000 be paid in 1973 and that the second $15,000 be paid after January 1, 1974. 625 P.2d at 532, 38 St.Rep. at 328. We then remanded the case for the trial court to determine, as a question of fact, when the first $15,000 was to be paid and whether time was of the essence. 625 P.2d at 536, 38 St.Rep. at 333.

The trial court, after hearing more evidence, ruled that payment of the first $15,000 was to be on November 1, 1973, and although it was not paid on November 1, time was not of the essence on the contract and the plaintiff timely tendered the $15,000 before he was given notice of forfeiture. We affirm the trial court on this issue.

Time of the essence was not made an express condition of the agreement between plaintiff and the defendants. Although the evidence establishes that the first $15,000 payment was not made on November 1, 1973, as agreed, defendants continued to act as though the agreement was still in effect. Plaintiff made a $2,000 payment on November 2, 1973, and defendants accepted it as part payment. Further, the defendants did not give plaintiff notice that he had a time limit in which to tender the balance of the $15,000, or forfeit his interest in the ranch.

When plaintiff paid the $2,000 to defendants on November 2, 1973, he indicated he would have the balance within a few days, and defendants agreed. During the next several weeks defendants did, however, ask for payment on several occasions, without success. On each of these occasions plaintiff either said he would have the money in a few days

4

or within a short time. Although it is clear that plaintiff knew defendants needed the money, he was never notified that his interest would be forfeited on a date certain if he failed to pay the balance of the first $15,000 payment.

Further, before plaintiff filed his suit for specific performance on December 12, 1973, he had tendered payment to defendants at least three times. On one occasion, after being called by a lawyer at defendants' request, he tendered the payment to the lawyer, but the lawyer told him either to take the money to the bank or to the defendants. In addition, on two more occasions payment was tendered directly to the defendants, but it was refused.

In not setting a date certain on which plaintiff was to make the remaining payment of the first $15,000 payment, defendants could not forfeit plaintiff's interest in the contract. Because there were no forfeiture provisions in the contract, and because the defendants had granted several extensions to plaintiff, they could not forfeit the plaintiff's interest without first giving him notice of their intent. Collins v. Collins (1957), 348 Mich. 320, 83 N.W.2d 213, 68 A.L.R.2d 575. In granting the numerous extensions beyond the November 1 payment date, the defendants effectively waived strict compliance with any contract terms.

Because time was not made the essence of the contract, and because defendants did not give plaintiff a date certain on which to pay the balance of the first $15,000 payment, the trial court did not abuse its discretion in determining that plaintiff did not forfeit his interest in the ranch and in granting specific performance.

We next consider the question of whether the terms of the order granting specific performance are equitable. The

5

order was a simple one. The trial court ordered the defendants to execute a warranty deed to the plaintiff for the land and to execute assignments of leases which went with the land. The plaintiff was ordered to pay $28,000 to the defendants with interest at 10 percent per year from the date of judgment.

The defendants were in possession of the land before the contract dispute when they leased the land from the McGhees, and they have been in possession of the land ever since. Within a year or so after plaintiff filed suit, he moved to California and has lived there ever since. Defendants have been in possession of the property and they have made all the contract payments for the land to the McGhees--an amount which, including interest, exceeds $107,000. In addition, they paid the property taxes, kept up insurance, made improvements on the land, and made the payments on grazing leases they had with Burlington Northern, Inc.

It appears that the ranch operations were unable to sustain defendants' family. During this time both defendants were employed. Sharon Gookin had a secretarial job and Marvin Gookin, by using his own truck, regularly took jobs as a hauling contractor.

The effect of the trial court's judgment is that by paying $30,000, plaintiff is getting property which he contracted to pay $130,000 for. In addition the land undoubtedly has appreciated in value over the years and is worth much more than $130,000. On the other hand, the defendants have had the use of the land now for almost ten years. The question, of course, is whether the court's judgment, under these circumstances, is fair. Unfortunately,

the record is rather barren on the relative equities of the parties.

It appears that the court's judgment was based on a notice of election filed by plaintiff sometime during the trial proceedings. In the event that the court granted specific performance, plaintiff asserted a right to waive any claim he may have for rents and profits or reasonable rental value for the period in which the defendants were in possession of the land. In exchange for this waiver he claimed he could not be compelled to pay any "interest on the balance of the purchase money due under the contract with the defendants to convey, $28,000."

In granting specific performance the trial court adopted, verbatim, the proposed findings and conclusions of the plaintiff. In conclusion of law no. 15, the court declared the rights of the parties resulting from plaintiff's election. It states:

> "The plaintiff had the right to elect whether to claim the rents and profits or reasonable rental value of the property or, in the alternative, keep the interest on the purchase price which he owed to the defendants for the property. The plaintiff has elected to keep the interest on the purchase price by formal election introduced into evidence in this cause."

Plaintiff's notice of election and the trial court's conclusion of law concerning this election, are clearly confined to a waiver of rents and profits in exchange for not paying interest on the $28,000 still owed to defendants as a result of the 1973 agreement. By its terms, the notice of election did not extend to a claim of right not to have to pay the defendants the principal and interest which they paid pursuant to the contract for deed with the McGhees. In entering its final judgment, despite the defendants seeking

7

to amend the findings and judgment, the trial court ignored this vital fact.

We further note that the right to an election such as claimed by the plaintiff here, is not absolute. 7 A.L.R.2d 1204, § 7, 1218. The purchaser seeking specific performance is entitled to such an election only if he is without blame and if the vendor has wrongfully deprived the purchaser of possession. Cotton v. Butterfield (1905), 14 N.D. 465, 105 N.W. 236, 7 A.L.R.2d 1204, § 7, 1220. Although we do not disturb the trial court's conclusion that the plaintiff here was entitled to specific performance, he was not without fault, and the defendants undoubtedly were in good faith in defending the suit for specific performance. The plaintiff failed to make the payment when promised, and on several times thereafter he failed to make the payment when it was requested. In addition, by plaintiff failing to make the payment when due, the defendants lost a deposit on a trailer home they had purchased in anticipation of turning the ranch over to the plaintiff.

Beyond the fact of virtually paying off the contract with the McGhees (which, together with principal and interest amounted to at least $107,000), the defendants, over the past decade, made numerous improvements on the property as well as paid taxes, etc. Nor is there any indication that the plaintiff wanted the ranch on which to personally reside. A short time after this dispute started, the defendant moved to California, and has resided there ever since. Here the defendants refused to convey only because of a misunderstanding. A misunderstanding at least in part caused by the plaintiff's failure to pay the first $15,000 when he was supposed to. Where a misunderstanding exists, the

8

purchaser cannot avoid an accounting by the expedient of electing to waive rents and profits. See Annotation 7 A.L.R.2d 1204, § 7, 1220. Here the equities clearly predominate in favor of an accounting.

Equity can only be accomplished by requiring a full consideration of the relative expenditures made by the parties in maintaining the status quo during the pendency of this litigation. Defendants must account for the rents and profits if any, or a reasonable rent for the ranch, during the years of their occupancy. Against these duties must be balanced what defendants were compelled to do over the years of occupancy in order to maintain possession of the property. They paid off, or almost paid off the contract to the McGhees; they paid interest on the unpaid balance; they paid the property taxes during the years of occupancy; they kept the place insured; and they made improvements. Equity cannot be accomplished in this case unless all these factors are considered in determining how much plaintiff should ultimately pay. The order stating plaintiff must pay only $28,000, strikes us as being more than a little unjust to the defendants.

The judgment of the District Court ordering specific performance is affirmed but this cause is remanded for a full hearing and full consideration of the payments of the parties during the period of occupancy of the land involved. Only then can a proper money judgment be entered.

The judgment of the District Court is affirmed in part, and vacated in part, and remanded for further proceedings.

Daniel J. Shea
Justice

9

We Concur:

_____
Chief Justice

_____

_____
Justices

10